.[No. 3756. Decided April 8, 1901.]

CECILIA McCORD, *Respondent, v.* GEORGE McCORD, *Appellant.*

| 24 | 529 |
|----|-----|
| 26 | 300 |
| 26 | 337 |

| 24 | 529 |
|----|-----|
| 29 | 395 |

| 24 | 529 |
|----|-----|
| h32 | 497 |

| 24 | 529 |
|----|-----|
| 34 | 298 |

| 24 | 529 |
|----|-----|
| 38 | 36 |

JUDGMENTS — VACATION — RES JUDICATA.

One who has attacked a judgment by motion to vacate, and has failed to prosecute an appeal from the denial of his motion, cannot subsequently maintain an action to cancel the judgment, since his remedy was by appeal, and the question of the validity of the judgment is *res judicata.*

SAME — DISCRETION OF COURT.

Where the appellate court is not in possession of all the circumstances surrounding the case upon which the lower court acted in refusing to vacate a judgment, there is no ground for its interference with the action of the lower court, since the

question of the vacation of a judgment is so largely a matter
of discretion, that the orders of the lower court therein will
not be reversed, unless it plainly appears that the discretion
has been abused.

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge. Affirmed.

*J. J. McCafferty, John F. Dore* and *John W. Kelley,*
for appellant.

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The respondent commenced an action
for divorce against the appellant by filing a complaint and
summons, on the 8th day of November, 1899, in the
superior court of King county. The sheriff returned that
he was unable to find the defendant in King county. On
proper showing an order was granted to have the defend-
ant served with summons by publication, and the first
publication was made on the 15th day of November,
1899. On the 16th day of January, 1900, notice was
served on the prosecuting attorney of King county that
the action would be called for trial on January 20th, as
a default case. On January 20th the defendant was de-
clared in default. The case was heard and decree for
divorce was entered in favor of the respondent; also, cer-
tain property was adjudged to be the property of the re-
spondent. The appellant at the time was in the Northwest
Territory, and, according to his petition, did not receive
a copy of the summons until the 20th day of January,
1900, the day upon which the decree was entered. He
entered into communication with one M. M. Madigan,
an attorney at law in Seattle, who appeared for the de-
fendant, and on his behalf served on the plaintiff's attor-
ney and filed in the action a motion to set aside the judg-

ment rendered on the 20th day of January. On the 14th day of April another motion was made to set aside the judgment. On the 24th·day of April the motion came on for hearing and was ·denied by the court. Attorney Madigan died some time after this, and the present attorneys were employed. A petition to re-open and to vacate and set aside the judgment was heard and denied on the 19th day of September, 1900, and, from the action of the court in denying this petition, this appeal is taken.

A very earnest appeal in behalf of the petition of the appellant is made by counsel in their brief, and it is insisted that he has never had his day in court, and that a fraud has been perpetrated upon him by reason of the proceedings. But we are inclined to think that appellant has lost his rights in this action, if he ever had any. His petition, in which presumably was set out all the defense to the action that he had, was determined against him by the court on April 24, 1900. The ruling of the court in this respect was appealable. It is said by this court in *Chezum v. Claypool,* 22 Wash. 498 (61 Pac. 157, 79 Am. St. Rep. 955) that where the statutes afford a full, complete, and adequate remedy against an illegal judgment, by authorizing the aggrieved party to proceed by motion to vacate and set aside, and permitting an appeal from any order entered upon such motion, one who has attacked a judgment by motion to vacate, and has failed to prosecute an appeal from the denial of his motion, cannot subsequently maintain an action to cancel the judgment, since the question of the validity of the judgment is *res judicata.* The action here is in effect the same as it was in that case. The remedy was by an appeal from the order rendered on the 24th day of April, 1900, instead of by another motion based upon practically the same application.

It is said that the attorney who represented the appellant in the first application died; but when he died, and whether he was prevented from perfecting an appeal by his illness and decease, or whether he saw fit to waive his rights to an appeal, does not appear of record. Again, the question of the vacation of a judgment is so largely a matter of discretion in the lower court that the appellate court would hesitate to reverse its judgment on that question unless it plainly appeared that the discretion had been abused. It was said by this court in *Livesley v. O'Brien,* 6 Wash. 553 (34 Pac. 134), in discussing a motion to vacate:

"Motions of this character are directed to the discretion of the trial court, and its action in passing thereon will not be reversed by this court unless the record shows an abuse of such discretion. It is not sufficient that we should find as a matter of fact that the showing was sufficient to have justified the setting aside of the judgment. We must further find that the showing was such that there was no room for the exercise of discretion by the lower court before we can rightfully interfere."

The evidence adduced at the trial in this case has not been brought here. Consequently this court is not in possession of all the circumstances surrounding the case upon which the lower court acted. It is, however, urged by the attorneys for the appellant in their brief that the appellant, who had been in the Northwest Territory since April, 1895, returned to his home at Seattle in the fall of 1898, living with his wife until the spring of 1899, some four months, and that during such visit the wife treated him with respect and affection, and by reason of such treatment the appellant was deceived with reference to any intention which the wife had of bringing an action against him for divorce. In fact, this appears in the answer of the appellant, sworn to by himself, which

was filed in connection with his petition on the 11th of September, 1900, in aid of his last application for a vacation of the judgment. The answer in this respect is as follows:

"And defendant further shows that about the month of April, 1899, after a visit to his wife and home in the winter of 1898 and 1899, defendant returned to Bonanza aforesaid in the Northwest Territory, and defendant left with the full knowledge, consent, and approval of the plaintiff, and the conduct of the plaintiff towards the defendant during his said visit home in the winter of 1898 and 1899, and at parting in April, 1899, was of a most affectionate and loving kind and character. Plaintiff, at parting, kissed and fondly and affectionately bid the defendant good-bye and God-speed, and sent her son to the station with the defendant; and there were no words spoken by the plaintiff and no act on the part of the plaintiff intimating, in the remotest degree, that the plaintiff was dissatisfied with the defendant from any point of view, or had anything except the kindest and most affectionate and loving feelings for him."

But in the answer which was filed a few months before in aid of his first petition for a vacation, we find the following in relation to the same visit:

"That from the time he returned from Dawson City to Seattle, in the fall of 1898, and until about March 1st, when he again returned to the Klondike, the plaintiff was guilty of cruel and inhuman treatment to and of the defendant, in this: that she would not allow him around his home during the day-time at all; that she kept up a continual course of nagging, teasing, and quarreling with and harassing defendant, accusing him of being jealous of her and in other ways, and using vile and abusive launguage to and of him, not fit to be mentioned herein, which nagging and abuse defendant now believes was for the sole purpose of exasperating the defendant so that she might get some excuse for a foundation for a divorce against him and cheat and defraud him out of all of his said property."

We mention these contradictory assertions simply to show that the court may have taken them into consideration, with other circumstances which may have come to the court's knowledge, in denying the last application presented to him. It is true that the answer in the first instance was filed by his attorney, and not by the appellant himself; but the attorney makes affidavit that he "has heard the foregoing answer read, knows the contents thereof, and believes the same to be true," and, having been in communication with the appellant with reference to these matters, it must be concluded that the matters and things which were set up in the answer were based upon information received from the appellant,— especially matters which must of necessity be known only to the parties to the action. Nor does the appellant deny the truthfulness of the allegations of the answer, just recited, although he does specifically deny that he furnished the attorney with information in regard to the alleged adultery of his wife.

In addition to what has been said in regard to the discretion vested in the lower court in matters of this kind, we will call attention to §4880 of Bal. Code, which is as follows:

"If the summons is not served personally on the defendant in the cases provided in the last two sections, he or his representatives, on application and sufficient cause shown, at any time before judgment, shall be allowed to defend the action, and, *except in an action for divorce,* the defendant or his representative may in like manner be allowed to defend after judgment, and within one year after the rendition of such judgment, on such terms as may be just; . . ."

It would seem from this that it was the intention of the legislature to allow the defendant in a divorce action to defend at any time before judgment, but that a de-

fendant in a divorce action was specially excluded from defending after judgment; the legislature, no doubt, having in contemplation the law allowing divorced persons to marry after six months from the date of the decree, and having in mind the injury that might ensue from the defense of a divorce action after judgment.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.