MONAEI L. PERI, Plaintiff, *v.* WALLACE GROVES, Defendant.

Supreme Court, Special Term, New York County, June 7, 1944.

*Leonard P. Moore, James K. Crimmins* and *Howard Robert Lass* for plaintiff.

*Abraham N. Geller, Bernard A. Saslow, Joyce N. Feldman* and *Sol Rosenbluth* for defendant.

SHIENTAG, J. The motion is by plaintiff, the former wife of the defendant, for summary judgment against him in the sum of $9,000 pursuant to an amended final judgment and decree of the First Judicial District Court, County of Ormsby, State of Nevada, in the divorce action between the parties.

Plaintiff and defendant were married in 1934. There was one child of the marriage, a son. In 1937, plaintiff sued defendant for divorce in the First Judicial District Court of Nevada. Defendant, although not a resident of, or domiciled in, that State, appeared generally in the action by Nevada counsel, George Springmeyer, Esq. On June 12, 1937, the Nevada court rendered its final judgment and decree of absolute divorce.

The final judgment awarded to plaintiff the sum of $135,000 in lieu of all claims for alimony, counsel fees and costs of the suit; it awarded custody of the child to the parties jointly and equally, directed the defendant to make annual payments of $3,000 to the plaintiff for the support of the child (in addition to other expenses in connection with the child's education and upbringing) and contained various other provisions, including provisions for arbitration in New York of disputes with respect to the child and for the giving of all notices concerning the child to the respective parties at stated addresses in New York City. The judgment further provided that neither party shall have " the right, claim or interest of any kind, nature or character whatsoever against the person, property or estate of the other, growing out of or that she or he may have acquired or possessed, or may in the future acquire or possess by virtue of the marriage of plaintiff and defendant, save and except as herein ordered by this court."

The Nevada District Court did not, in the final judgment of June 12, 1937, make any express reservation of the right to modify or amend. The defendant has complied with the provisions of that judgment. In the spring of 1940, defendant's

New York lawyer advised Mr. Springmeyer that plaintiff contemplated making application to modify the final judgment and decree of divorce and notified Springmeyer that he was without authority to represent the defendant.

Thereafter, on August 2, 1940, plaintiff's attorney served upon Mr. Springmeyer two notices of motion in the divorce action, to amend and modify the final judgment and decree by, among other things, awarding sole custody of the child to the plaintiff, increasing above $3,000 annually the provision for payments by defendant for the support of the child and awarding to plaintiff a counsel fee in connection with the preparation of the applications to amend and modify.

Plaintiff's applications to modify were never served upon defendant within or without the State of Nevada and were never mailed to him, nor was any notice thereof given to him at the address in New York City designated in the original 1937 final judgment. Mr. Springmeyer informed the defendant's New York lawyer of the '' service '' of the applications and was advised by the latter that he, Springmeyer, had no authority to enter a general appearance on behalf of the defendant on the hearing of the motions, but he directed Springmeyer to appear for the defendant specially and object to the jurisdiction of the court.

On July 14, 1941, Springmeyer appeared specially in the District Court and stated his objection to the court's jurisdiction, whereupon the court set a date for argument. On that date Springmeyer appeared specially on behalf of defendant. As Mr. Springmeyer's affidavit states: '' Counsel for plaintiff and your affiant on behalf of defendant orally argued the court's jurisdiction to hear the motion. Briefs on the law were submitted by both sides. No testimony was taken at said hearing. No transcript of argument was made. The court held no trial of the facts upon which the jurisdiction was based. On the same date and immediately upon the conclusion of the said oral argument, the said court overruled the defendant's objection to the jurisdiction and set a date for the hearing of the motions of the plaintiff on the merits.''

Thereafter Mr Springmeyer, acting on the instructions of the defendant's New York lawyer, filed defendant's petition in the Supreme Court of the State of Nevada (the highest court of the State) for a writ of prohibition restraining the District Court from further proceeding with respect to the plaintiff's applications. Defendant's petition for a writ of prohibition was dismissed, with an opinion which will later be discussed (*Ex Rel. Groves* v. *District Court,* 61 Nev. 269).

Mr. Springmeyer then took no further steps and did not other-wise participate specially or generally in any proceedings in the Nevada courts with respect to plaintiff's motions to modify. Subsequently, both oral and documentary evidence were intro-duced in the Nevada District Court on plaintiff's behalf, in support of her motions, the defendant not being present per-sonally or by an attorney.

The court granted plaintiff's motions and on July 21, 1942, rendered its "Modified and Amended Judgment and Decree." This altered the original judgment of 1937 in a number of mater-ial respects. It awarded sole custody of the child to the plain-tiff, eliminated provisions for arbitration in New York City, con-tained an express provision reserving further jurisdiction in the court with respect to the support and maintenance of the child, and increased from $3,000 annually to $5,000 a year, payable semi-annually, the amount which the defendant was required to pay for the support and maintenance of the child. It further adjudged and decreed that defendant pay the plaintiff the sum of $6,000 as and for counsel fees for the preparation and presentation of her motions to modify. The instant suit is brought to recover a total of $9,000, of which $6,000 represents the counsel fees and $3,000 the increased amount for the sup-port of the child for a period of a year and a half.

To what extent are the courts of New York required to give full faith and credit to the amended judgment of the District Court of Nevada, which is the basis of this action? Were the modifications of the final judgment of 1937, in whole or in part, violative of due process? May the determination of jurisdic-tion by the Nevada court be collaterally attacked in this action, in whole or in part, or will such determination, even if erroneous, be treated by our courts as *res judicata?*

Before considering these questions, it would be well to take up the opinion of the Supreme Court of Nevada on its dismissal of the defendant's petition for a writ of prohibition. The *ratio decidendi* was that a Nevada divorce decree, under the statute of that State, is never final with respect to custody, and that since the action for that purpose is a continuing one, an appli-cation to modify the provisions relating thereto may be made on reasonable notice to the other party concerned. It held on the conceded facts that service on the defendant's original attor-ney of record constituted such reasonable notice. The court also held, on the authority of a well-considered dictum in an earlier decision, that where the District Court has the right to modify, it is incidentally authorized to direct an allowance

to the wife for counsel fees. (*Fleming* v. *Fleming,* 58 Nev. 179.)

The opinion goes on to distinguish between the power of the Nevada court to modify a divorce decree with respect to custody of the child, and with respect to its support. It holds that while for purposes of fixing the custody of the minor child, the original proceeding is never finally terminated, but is deemed to continue before the court, that the proceeding is not deemed to continue, for the purpose of modifying provisions for the support of the child, unless the original decree expressly reserves such jurisdiction. The opinion announces that under the law of Nevada (and other jurisdictions as well), an attempt to modify a decree need not be begun by service of process on a party, provided the original proceeding is deemed to be continuing; and that it is enough if the party is in some way given reasonable notice of such motion. It is not stated, yet clearly inferable, that in a case where modification of a decree is sought with respect to the support of the child, actual service of process upon the party, as in a new action, is necessary unless the original decree had reserved continuing jurisdiction with respect to the child's support. These principles had been indicated in comparatively recent decisions of the Nevada Supreme Court. (*Fleming* v. *Fleming,* 58 Nev. 179, *supra; Jones Ex Rel.* v. *District Court,* 59 Nev. 460; *Abell* v. *District Court,* 58 Nev. 89; *Lewis* v. *Lewis,* 53 Nev. 398; *Sweeney* v. *Sweeney,* 42 Nev. 431.)

The opinion of the Nevada Supreme Court further stated that the question as to whether or not in a particular case a party received reasonable notice, is one of fact, and it examined that question of fact in the case at hand. It pointed out that Springmeyer's authority to act as attorney had never been formally cancelled; that the defendant had in fact received notice and indeed had not contended that service of the papers on Springmeyer was not calculated to or did not in fact give him adequate notice of the proceedings. It therefore found as a fact that the District Court obtained jurisdiction over the defendant.

The only actual adjudication of the Supreme Court of Nevada was that the District Court not being without jurisdiction, the petition for a writ of prohibition had to be dismissed. The adjudication which is the basis of the instant action is that made by the District Court, from which no appeal was taken. That court rendered no opinion. It seems to have ignored the distinction pointed out in the Nevada cases. Perhaps it laid down new law on the subject, not in direct conflict with those cases,

but in extension of the principles they announced, namely, that while ordinarily a court would have no right, in the absence of express reservation in the decree, to modify specific provisions for the support of a child, where a change of custody required a change in the provision for support, it could as a necessary incident of its right to change custody make the required change in support.

Now as to the fundamental questions of law presented by this motion. This entire subject has so many ramifications that prudence compels restriction to the particular facts and circumstances of the case here being considered. The defendant plaintively argues that if the amended judgment of the District Court of Nevada is here upheld, he "would remain divorced from his former wife but may find instead that he has unwillingly and unwittingly married the state of Nevada and cannot be divorced from it despite the liberal divorce laws of that state."

The position in which the defendant finds himself is largely the result of his own choice. By appearing generally in the Nevada action, he made no contract with the State of Nevada as to what its courts would or would not do in furtherance of the judgment and decree of divorce entered in that State. By so appearing in the divorce action, the defendant submitted himself to whatever future proceedings the law of Nevada, by statute or by judicial decision or both, would hold to be continuations merely of the original action, provided that such holding was not in conflict with constitutional requirements. (See *Englander* v. *Jacoby,* 132 N. J. Eq. 336; *Michigan Trust Co.* v. *Ferry,* 228 U. S. 346.) This concept of the effect of a general appearance, as a submission to jurisdiction with respect to continuations of the original proceeding, has no application to new causes of action. The distinction between the two situations is not always clearly marked out (Restatement, Judgments, § 5, pp. 31, 32; cf. *Adam* v. *Saenger,* 303 U. S. 59; *Young Co.* v. *McNeal-Edwards Co.,* 283 U. S. 398; *Chicago Life Ins. Co.* v. *Sherry,* 244 U. S. 25). In matrimonial actions, however, it is entirely reasonable, if indeed it is not always desirable, for courts, by virtue of statute or of judicial decision, to retain control over their final judgments and decrees.

Under the law of Nevada, despite the absence of an express reservation in the decree, the court has the power to amend and to modify its provisions relating to the custody of minor children of the marriage. The highest court of Nevada has likewise held that the court has continuing power to award

counsel fees for services in connection with an application to modify the provisions of a decree relating to custody.

So far as these matters are concerned, no new action has to be started and all that has to be done to comply with constitutional requirements is to give the defendant such notice as was reasonably calculated to advise him of the pendency of the application and to enable him to be heard thereon. The Nevada court found that such reasonable notice was in fact given to the defendant when the application was served on the attorney of record in Nevada who had appeared generally for him in the divorce action. We must look to the substance rather than to the form. If notice had been sent to the defendant at the address in New York specified in the decree as the place to which notices relating to the custody of the child were to be sent, that would have met the constitutional requirement of due process of law. The defendant, however, was in no way prejudiced by the failure to give him notice in that manner. Concededly he was fully advised by the Nevada attorney of the pendency of the motions. In fact he retained that attorney to enter a special appearance on his behalf, challenging the jurisdiction of the court of Nevada over his person and over the subject matter of the applications and when that special appearance was overruled by the District Court he authorized that same attorney to apply for a writ of prohibition on his behalf in the Supreme Court of the State of Nevada.

There was therefore no violation of the due process clause of the Constitution when the District Court of Nevada, after a hearing in which the defendant elected not to participate, modified the provisions of the decree relating to the custody of the child and awarded a counsel fee in connection with that application. That the services for which the counsel fee was allowed may, and probably did, include those rendered in connection with the increase in amount of support that followed the change from joint and equal custody to sole custody of the plaintiff, does not affect the constitutional aspect of the situation.

A motion to modify a decree with respect to the support of a minor child of the marriage which has been dissolved seems just as closely related to the decree and just as much a continuance of the divorce action as is an application for change of custody. So far as constitutional requirements are concerned, there is no valid distinction between the two situations. We are not here concerned with the impairment of the obligation of a contract, or with an interference with vested rights, such as might arise in connection with modifications of a lump sum

allowed to a divorced wife in lieu of alimony, or with periodical payments of alimony for the support of wife and children. (See *Kamp* v. *Kamp,* 59 N. Y. 212; *Livingston* v. *Livingston,* 173 N. Y. 377.) So that if by the laws of Nevada, whether arising from statute or by virtue of judicial decision, the courts had the right to modify provisions made solely for the support of. a child where its custody was changed, the notice here given of such an application would have complied with constitutional requirements. It would be regarded as one of the continuing incidents of the old divorce action rather than the institution of a new action.

Thus far I have proceeded largely on the assumption that no action whatever was taken by the defendant, in Nevada, in connection with the application for modification of the decree of divorce. In fact, however, he did take two important steps, carrying with them certain legal consequences.

He specifically authorized the Nevada attorney who had appeared for him in the divorce action to enter a special appearance on his behalf before the District Court, challenging the jurisdiction of that court over his person and over the subject matter of the applications. That special appearance was overruled, after the parties were heard. That the court decided on affidavits or on oral argument rather than by taking formal proof in no way affects the legal situation. Thereupon defendant authorized his Nevada attorney to apply to the Supreme Court of the State of Nevada for an order of prohibition directed to the District Court. That application was denied. The District Court, the defendant not thereafter appearing by counsel, heard the application on the merits and made the order earlier referred to.

Much has been written about the effect of a special appearance. In some States it has been held that a special appearance challenging the jurisdiction is tantamount to a general appearance, and such holdings, whether by statute or by judicial decision, have been held not to be in violation of due process. (*Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, *supra; York* v. *Texas,* 137 U. S. 15.) In Nevada and in New York, as well as in most of the other States, the distinction between the two types of appearance is maintained. The defendant by his special appearance and the application for a writ of prohibition chose to litigate the question of jurisdiction in the courts of Nevada. He did litigate it there. It is urged, therefore, that the decision as to jurisdiction, whether right or wrong, is *res judicata* and cannot be attacked collaterally.

To attempt to analyze and to reconcile the many decisions on this subject would swell this opinion to most unreasonable proportions. We start with the general proposition that " The judgment of another state may be impeached for want of jurisdiction of the person or subject-matter when it comes in question in our courts " (*Jones* v. *Jones,* 108 N. Y. 415, 423).

There is, however, a principle of law which has as its basis the view that it is undesirable to allow the issue of jurisdiction to be litigated and relitigated; that it is sounder policy to have repose in such matters (see the note entitled " Res Judicata and Jurisdiction: The Bootstrap Doctrine ", 53 Harv. L. Rev. 652). The doctrine in substance amounts to this: that the decision of a court, on a special as well as a general appearance, that it has jurisdiction, will not be allowed to be the subject of collateral attack but will be treated as *res judicata.* The cases range from those which declare that such a determination of jurisdiction may be treated as *res judicata* to those which hold that it must be treated as such and afforded full faith and credit. (See *Tatum* v. *Maloney,* 226 App. Div. 62, and the cases therein discussed.)

One of the leading cases on this subject is *Baldwin* v. *Traveling Men's Assn.* (283 U. S. 522). That was an action in the Federal court in Iowa on a judgment of the Federal court of Missouri. The full faith and credit clause, therefore, was not involved. The defendant had appeared specially in Missouri and had urged the invalidity of the service of process. Its plea had been overruled and it had withdrawn from the case. The Supreme Court held squarely that the issue of jurisdiction was *res judicata.* The respondent contended that " to deprive it of the defense * * * of lack of jurisdiction over it by the Missouri District Court would be to deny the due process guaranteed by the Fourteenth Amendment ". The Supreme Court on this point held, however, that " there is involved in that doctrine no right to litigate the same question twice ". (The court cited *Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, *supra.*)

On the main issue the court said: " The substantial matter for determination is whether the judgment amounts to *res judicata* on the question of the jurisdiction of the court which rendered it over the person of the respondent. It is of no moment that the appearance was a special one expressly saving any submission to such jurisdiction. * * * The special appearance gives point to the fact that the respondent entered the Missouri court for the very purpose of litigating the question of jurisdiction over its person. It had the election not to appear at all,

If, in the absence of appearance, the court had proceeded to judgment and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction. * * * It had also the right to appeal from the decision of the Missouri District Court * * *. It elected to follow neither of those courses, but, after having been defeated upon full hearing in its contention as to jurisdiction, it took no further steps and the judgment in question resulted.''

The court then proceeded to lay down the broad principle that '' Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.''

In *Davis* v. *Davis* (305 U. S. 32) there had been a separation decree in the District of Columbia by which the husband was required to make certain payments to the wife. He went to Virginia and there procured an absolute divorce and upon that judgment sued in the District of Columbia for modification of the decree of separation. The court was bound to grant the modification if the Virginia decree was rendered upon jurisdiction over the subject matter and the parties. That question had been litigated in Virginia: the wife had appeared there specially to challenge the jurisdiction, alleging that the husband was not domiciled in that State. The Virginia court examined the question of fact and overruled her plea. She did not appear further. The United States Supreme Court held that the determination of jurisdiction was *res judicata*.

In *Stoll* v. *Gottlieb* (305 U. S. 165) the doctrine was further extended. The Federal District Court had rendered a decree reorganizing the affairs of a debtor. Plaintiff was a party to that proceeding. Thereafter the plaintiff sued a guarantor of the indebtedness in a State court. He argued that the Federal court did not have jurisdiction to discharge the guarantor. The United States Supreme Court held that the issue of jurisdiction was *res judicata*. Its decision is epitomized as follows: '' * * * we base our conclusion here on the fact that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to the respond-

ent.   That determination is *res adjudicata* of that issue in this action, whether or not power to deal with the particular subject matter was strictly or quasi-jurisdictional.''   Here the principle of *res judicata* was applied, first, to a question of jurisdiction over the subject matter and, second, where the issue was one of law rather than of fact.   (See, also, *Treinies* v. *Sunshine Min. Co.,* 308 U. S. 66.)

In *Chicot County Dist.* v. *Bank* (308 U. S. 371) a Federal District Court confirmed a readjustment plan in a proceeding to which the plaintiff was a party.   In a subsequent case the statute under which the District Court acted was declared unconstitutional.   The plaintiff then sued the debtor in a second Federal court, claiming that the first court had not had jurisdiction.   The question of constitutionality had not been litigated in the first court, yet the Supreme Court of the United States held that the question of the jurisdiction of that court was *res judicata*.   '' The court has authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action.''   It was urged that the respondents, having failed to raise the question in the proceedings to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit.   '' Such a view,'' the United States Supreme Court held, '' is contrary to the well-settled principle that *res judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, ' but also as respects any other available matter which might have been presented to that end.' ''

. It is true that, as later decisions indicate, the United States Supreme Court, in the situation we are here considering, does not purport to deal with absolutes or with principles of universal application.   (*United States* v. *U. S. Fidelity Co.,* 309 U. S. 506, 514, 515; *Kloeb* v. *Armour & Co.,* 311 U. S. 199; *Mercoid Corp.* v. *Mid-Continent Co.,* 320 U. S. 661, noted in 57 Harv. L. Rev. 574; *Kalb* v. *Feuerstein,* 308 U. S. 433.)   In each of these cases some reason of public policy was found to exist stronger than the reasons underlying the principle of *res judicata*.   In the *Kloeb* case, for example, a decision of a State court that a separable controversy was presented and might be removed to the Federal court was held not to be *res judicata* in the Federal court.   In the *Kalb* case a decision of a State court that it had jurisdiction to foreclose a mortgage upon farm land was held not *res judicata* in a subsequent proceeding under

the Frazier-Lemke Act, since the important purpose of that law was to prevent such foreclosures.

In the instant case, however, no reason of public policy exists that is stronger than the reasons underlying the principle of *res judicata* so far as jurisdiction is concerned. On the contrary, the decision of the District Court of Nevada, whether or not it fully reflects the law in that State, is in direct harmony with the present law of this State. The District Court of Nevada, in changing the provisions for support when it changed the custody of the child, did precisely what our own courts have the power to do in similar situations. Reasons of public policy dictate that all appropriate steps should be taken to safeguard the interests of a minor child, who is regarded essentially as the ward of the court, and as such entitled to its protection. To us in this State it would seem rather an anomalous situation if a Nevada court which had granted a decree of divorce, changed, for example, the custody of a child from the sole custody of the father to the sole custody of the mother and at the same time decided that it had no power to change the provisions of the old decree with respect to support and could make no award for the support of the minor child.

Our courts have, to a limited extent, power to order a change of custody of a child from that decreed by the courts of another State where there has been a substantial change in conditions. It has been held however that provision for support for a child could not be made in connection with habeas corpus proceedings where no matrimonial action had been instituted in this State. The jurisdiction of the Domestic Relations Court of the City of New York on this subject is circumscribed by law. The Nevada court, therefore, was the court that was competent to deal effectively with the situation as a whole. (*Finlay* v. *Finlay*, 240 N. Y. 429; *Matter of McAlpine*, N. Y. L. J., Nov. 18, 1943, p. 1383, col. 1, affd. 267 App. Div. 952; *Matter of Bull* [*Hellman*], 266 App. Div. 290, affd. 291 N. Y. 792; N. Y. City Dom. Rel. Ct. Act, § 92, subds. 3, 4; L. 1933, ch. 482.)

The defendant relies on *Matter of Baltimore Mail S. S. Co.* v. *Fawcett* (269 N. Y. 379, certiorari denied *sub nom. Madsen* v. *Baltimore Mail S. S. Co.*, 298 U. S. 675) and on *Guerin Mills* v. *Barrett* (254 N. Y. 380). Each case is distinguishable on the facts, although the opinion in the *Baltimore Mail* case does have language which is critical of the application of the doctrine of *res judicata* to matters of jurisdiction determined on special appearance. That case, however, involved a peculiar New York situation. The Appellate Division affirmed an order over-

ruling a special appearance and denying dismissal of the complaint. Its order was not appealable as of right to the Court of Appeals, even though a constitutional question was presented, but the writ of prohibition which had thereafter been applied for could be taken up as of right to the Court of Appeals after its denial by the Appellate Division. In the *Guerin Mills* case, while the doctrine here being considered was argued to some extent in the brief, it was not mentioned in the court's opinion.

The Restatement of the Law of Judgments incorporates the full substance of the recent United States Supreme Court decisions on this subject. Section 9, dealing with *" Res Judicata and Jurisdiction over the Person "*, declares: " Where a defendant appears in an action to object that the court has no jurisdiction over him and the court overrules the objection and judgment is rendered against him, the parties are precluded from collaterally attacking the judgment on the ground that the court had no jurisdiction over the defendant."

Section 10 of the Restatement of the Law of Judgments deals with *" Res Judicata and Jurisdiction over the Subject Matter "*, as follows: " Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of *res judicata* is outweighed by the policy against permitting the court to act beyond its jurisdiction."

To summarize, therefore, I hold: (1) The District Court of Nevada concededly had jurisdiction under the circumstances of this case to modify the original final judgment with respect to the custody of the child.

(2) As an incident to its power to modify the judgment as to custody, it had the right to award a counsel fee for services rendered in connection with the application to modify.

(3) It is probable, although by no means certain, that in changing the provisions for support, the District Court of Nevada decided contrary to decisions of the highest court of that State.

(4) The District Court of Nevada, a court of general jurisdiction, did, however, decide that it had jurisdiction to change the provisions for support as an incident to the change of the provisions for custody. That question was litigated before the District Court by the special appearance interposed on behalf of the defendant. He could have appealed to the Supreme Court of the State of Nevada from the adverse decision and

have obtained the adjudication which he now contends is actually the law of that State. He failed to do this, however, and there is no reason why he should be permitted to relitigate that issue collaterally in the courts of this State. " It is a strong thing for another tribunal to say that the local court did not know its own business under its own laws " (*Michigan Trust Co. v. Ferry*, 228 U. S. 346, 354, *supra*). The doctrine of *res judicata* in questions of jurisdiction over the person and over the subject matter reflects a sound public policy that there should be repose in litigation. The tendency of the recent decisions is to give full scope to the doctrine of *res judicata* in questions of jurisdiction unless the public policy behind the doctrine is outweighed by reasons of public policy in the State in which the doctrine is sought to be invoked.

(5) Particularly is this true in matters of custody and support of children provided for in divorce decrees of the courts of other States. Those courts are the only ones who are competent to deal with such situations as a whole and there is no reason in morals, in law or in sound public policy why the courts of this State should question the determination of the courts of other States on matters of their jurisdiction which were in fact litigated before them.

(6) The amended judgment of the Nevada District Court was not violative of due process of law.

I therefore conclude that the plaintiff is entitled to summary judgment for the relief demanded in the complaint. Settle order on notice, which shall provide for a thirty-day stay of execution.