233 P.2d 809

**H. S. CRAMER & CO., Inc. v. WASH-BURN–WILSON SEED CO.**

**No. 7689.**

Supreme Court of Idaho.

July 2, 1951.

E. G. Elliott, Boise, for appellant.

Estes & Felton, Moscow, for respondent.

GIVENS, Chief Justice.

This action is a continuation of H. S. Cramer & Co., Inc., v. Washburn-Wilson Seed Co., 68 Idaho 416, 195 P.2d 346. Upon the remand, answer was filed and the matter heard upon a stipulation of facts.

The arbitrators awarded three amounts: $400 on car No. C&NW 81550 and $200 on car No. NCSTL 16196, because of cracked seed coats; and $980.21 as appellant's costs of procuring letter of credit demanded by respondent, in connection with the underlying original agreement whereby appellant contracted to purchase 2,000 tons of peas from respondent. Respondent contends this item was not included in the arbitration agreement; therefore, the arbitrators had no jurisdiction to make such an award.

The correspondence admitted in evidence by stipulation shows:

*Letter of May 7, 1946, Ptfs. Ex. 4,* from appellant to respondent enclosing an agreement for arbitration signed by appellant and requesting respondent to sign it and forward with check for $15.00 to Mr. Clark, Chairman of the Arbitration Committee, in Seattle, with this concluding clause: "We will also send to the above

Committee a complete statement of our case against you."

*Letter of May 10, Ptfs. Ex. 5,* in response thereto by respondent advising the agreement had been signed and forwarded with the requested check and concluding with this clause: "We presume upon receipt of this letter you will forward your check and your statement with regard to your claim."

*Letter of May 10, Ptfs. Ex. 3,* from respondent to Mr. Clark, enclosing the agreement and check, and:

"We understand H. S. Cramer & Company will forward their check directly to you within the next few days along with a statement of their case against us.

"While we are not fully familiar with the procedure of arbitration followed by your Committee, we assume that when this statement has been received by you a copy will be submitted to us for our reply. We await your further advice."

The Agreement of Arbitration, dated May 7, 1946, and referred to in the correspondence was as follows:

"We, the undersigned, hereby agree to submit and do voluntarily submit to the Arbitration Committee appointed in the City of Seattle, Washington, by the National American Wholesale Grocers' Association and the National Food Brokers Association, and indorsed by the National Canners' Association, for the consideration and adjudication of the said Arbitration Committee, a controversy now existing between us in regard to

allowances claimed by H. S. Cramer & Co., Inc. under contracts No. 1353 of December 4, 1945 and No. 1361 of January 14, 1946 of Washburn-Wilson Seed Company, Moscow, Idaho

"We hereby agree with each other to abide by such decision as the said Committee may render in the premises and consent that the arbitration and decision may be by a majority of the sub-committee of three appointed to act in this case.

"We agree that the loser shall pay the expenses of the arbitration, including the fees of the Committee, and also that, upon request of the Chairman of the said Arbitration Committee, and before action is taken by the Committee, each of us will deposit with the Chairman Fifteen (15) Dollars for the fees of the Committee, upon the understanding that his deposit will be returned to the party in whose favor the decision is made.

"And we further agree that the findings of the said Arbitration Committee shall be as binding upon us, our personal representatives, successors and assigns as would be a decision of the Court of Last Resort of the State of Washington.

"And we do hereby authorize and empower the said Arbitration Committee, or such members thereof as act in the present arbitration, to determine what allowance, if any, shall be awarded;

424

"And we do further agree that the party awarded shall promptly pay the amount against whom the allowance shall be thereof to the other.

"Witnesses:

H. S. Cramer & Co., Inc.
202 Produce Exchange, New York, 4,
N. Y.

B. Abraham President

"(Corporate seal or seals) Washburn-Wilson Seed Co.
By Herman Wilson, Jr."

*Letter of May 20, Ptfs. Ex. 1,* from Mr. Clark to respondent acknowledging receipt of its letter of the 10th and—"I have received a letter from H. S. Cramer & Co., Inc. dated May 16th covering their position in reference to their claim against you which they desire to be arbitrated as per agreement which you signed.

"I cannot submit a copy of this statement to you for your reply. It will be necessary for you to file your statement in writing or personally appearing before the Arbitration Committee which has not set a date and will await a statement from you."

*Letter of May 23, Ptfs. Ex. 2,* from respondent to Mr. Clark, acknowledging the receipt of his letter of the 20th and—"We note that you cannot submit to us a copy of the statement entered with you by the H. S. Cramer & Company, wherein they established their position in reference to their claim against us. Without this statement, we then must presume that their claim as submitted to you is the same as was submitted to us by their letter of April 30, 1946, as follows": Referred to $800 for cracked seed coats on two cars and

$450 on two other cars, total $1250.00, and—"Assuming that the above is their claim, we wish then to enter our statements as follows on the basis of this assumption": then followed exculpatory statements to the effect the condition and quality of peas came within the tolerance agreed upon by the parties. Award on the condition of the peas is not involved because respondent paid the $600 allowed therefor. Respondent's letter of May 23 continued:

"With further reference to Cramer's claims, we wish to point out that a saving on these contracts was reflected to Cramer by ourselves in the amount of $1,508 in freight rate. Cramer's letters of credit were established to cover shipment of 2,080,000 pounds at a rate of 40¼ cents per hundred pounds and 3,091,200 pounds at 33 cents per hundred pounds freight. The difference in the two freight rates was caused by the different original country shipping points from which these Peas were being drawn on transit to our processing plant. We, however, in our shipments, in an effort to be of assistance to Cramer, were able to use the higher priced inbound transit to apply on domestic ship-

ments which we were making of our own, and as a result on the total shipment made to Cramer of 5,171,200 pounds, the lower freight rate of 33 cents per hundred pounds was assessed. Thus, as indicated, a saving was made on the contract by us for Cramer of $1,508.

"In conclusion, Cramer have never given us any statement or evidence of damages suffered by them on these two contracts as a result of deliveries made, and further, even though we admit a possible claim on their part of $400 on contract No. 1353, the saving which we reflected to them in freight rate of $1,508 at a like expense to ourselves on our domestic shipments more than offsets this $400 claim, and also more than offsets the total possible claim entered by Cramer of $1250."

*Letter of January 18, 1946, Ptfs. Ex. 14,* from appellant to Mr. Wolff, evidently a broker or agent of some kind in New York City, acting perhaps for one or both of the parties herein in connection with certain matters in connection with the 2,000-ton contract, in addition to consignment and shipping directions, is as follows:

"We are giving instructions to the Bank of Manhattan Co., New York to open a Letter of Credit with their correspondents in Spokane, Washington, Seattle-First National Bank, in favor of seller, payable against the following documents:

1) Railroad Bill of Lading (original and one memorandum copy)

2) Commercial Invoice in triplicate

3) Federal Grading Certificate in quintuplicate

4) Weight Certificate in quintuplicate"

*Letter of June 8, Ptfs. Ex. 6,* from respondent to Mr. Clark acknowledging receipt of the Findings and Award made by the Arbitration Board June 3, 1946, copies evidently having been sent to both parties, accepting the decision relative to the grades, i. e., the $400 and $200, but—

"However, we are taking exception to the first portion of your award pertaining to expenses paid by H. S. Cramer & Co. to the Bank of Manhattan covering letters of credit and other expenses, etc., etc. amounting to $980.21.

"This particular item had never been raised in dispute and we, therefore, did not offer to submit it to arbitration. This should not have been entered by H. S. Cramer & Co. along with those items in dispute. As you may recall, we had requested a copy of the claims as submitted by H. S. Cramer & Co. but this was refused by the Arbitration Board. We, therefore, had only the letter written by the H. S. Cramer & Co. stating their grievances upon which we could file our reply, and to which grievances we agreed to submit to arbitration.

"In none of our correspondence with them was the point of the first portion of your award ever mentioned. Upon your notifying us that this portion of the award was outside of your jurisdiction, as per the foregoing, we will forward to you our

check for $600, in payment of the claims of the H. S. Cramer & Co., which we had agreed to submit to arbitration."

*Letter of June 14, Ptfs. Ex. 16,* from respondent to appellant enclosing a copy of respondent's letter of June 8, above noted.

*Letter of July 15, Ptfs. Ex. 20,* from appellant to respondent as follows:

"We beg to refer to our letter of June 10th. We have not yet received your check for $1,580.21 covering our debit note dated June 10th as per the findings and award of the Arbitration Board with regard to the above two contracts.

"May we draw your attention to paragraph (A) of arbitration signed by you and by us:

" 'And we do hereby authorize and empower the said Arbitration Committee, or such members thereof as act in the present arbitration, to determine what allowance, if any, shall be awarded; and we do further agree that the party against whom the allowance shall be awarded shall promptly pay the amount thereof to the other.' "

"We, therefore, shall feel obliged if you will kindly let us have your check for $1,-580.21 latest by July 25, 1946."

*Letter of July 17, Ptfs. Ex. 19,* from respondent to appellant expressed surprise at its letter of the 15th.

*Letter of July 22, Ptfs. Ex. 18,* from appellant to respondent as follows:

"We acknowledge receipt of your letter of July 17th and refer to ours of July 15th,

to which we have nothing further to add. *The award by the Arbitration Board of the National Food Brokers Association is final.* We, therefore, ask you to let us have your remittance amounting to $1,580.21 latest by July 30, 1946.

"We sincerely hope that you will remit this amount to us; otherwise you would force us to take other steps in order to collect this amount."

*Letter of July 29, Ptfs. Ex. 7,* from Mr. Clark to respondent was as follows:

"The Arbitration and Award of June 3rd, 1946 was made under the rules of the

National American Wholesale Grocers Association

National Food Brokers Association

National Canners Association

"I quote Paragraph (A) of arbitration signed by both parties:

" 'And we do hereby authorize and empower the said Arbitration Committee, or such members thereof as act in the present arbitration, to determine what allowance, if any, shall be awarded; and we do further agree that the party against whom the allowance shall be awarded shall promptly pay the amount thereof to the other.'

"Whereas the Arbitration was closed by the Washington State Arbitration Committee."

*Letter of July 31, Ptfs. Ex. 17,* from respondent to appellant acknowledging receipt of their letter of July 22 above noted, and—

"Please find attached herewith our check in the amount of $600.00 covering the award on the discrepancy in grade on car No. C&NW 81550 and car NCSTL 16196.

"With reference to the first item of the award made by the Arbitration Committee of $980.21, we are confident if you will check your file of exchange of correspondence between ourselves on agreeing upon this arbitration, this item was not mentioned in the correspondence and was not to have been submitted for arbitration; thus, our refusal to pay this amount."

*Letter of August 23, Ptfs. Ex. 15,* written by respondent to Mr. Clark, acknowledging receipt of his letter of July 29, and—

"There is serious doubt in our mind that your group carried on the arbitration of our case with H. S. Cramer & Company in accordance with these rules. We call your attention particularly to Rule 4, which we quote as follows:

" 'Each case must be clearly stated to the arbitrators, either orally or in writing. If the parties agree to state the case in writing, the facts shall be set forth in a plain and concise statement and the assent of all parties thereto shall be noted thereon in writing. It shall then be referred to the arbitrators for decision without further argument, unless all parties shall agree otherwise. If the case is to be presented orally each principal shall make his statement in such a manner as the arbitrators may direct.'

"We call your attention especially to the wording 'the assent of all parties thereto shall be noted thereon in writing.' In other words, we feel that your group did not have any authority to arbitrate any point upon which there had not been agreement in writing between H. S. Cramer & Company and ourselves of submitting those points to you for arbitration. As set forth in our previous letters to you, your award of $980.21 as expenses to Cramer for the establishing of letter of credit was not made in accordance with the rules of arbitration and your group had no authority to arbitrate this point since it was not agreed upon between Cramer and ourselves to submit this point for arbitration. The only points which we had agreed upon were covered in our letter to you of May 23 wherein we outlined our case.

"We should appreciate your further advice."

*Letter of August 26, Ptfs. Ex. 21,* from Mr. Clark to respondent is as follows:

"Acknowledging your letter of the 23rd, the arbitration referred to gave every consideration of Rule Four set up in your letter. Your Brief filed with the Arbitration Committee on May 23rd, 1946 and H. S. Cramer & Co., Inc. Brief filed on May 16th, 1946 with an additional sworn statement from the Bank of Manhattan Company received full consideration of the Arbitrators as outlined in the Award of June 3, 1946.

"If you can obtain a letter from H. S. Cramer & Co., Inc., New York City, N. Y. duly certified by them that they desire the withdrawal of their claim covering charges paid the Bank of Manhattan Company, New York, dated May 23, 1946 amounting to $980.21 and stating it was not their intention to include same in the Arbitration · and advise us we then will consider eliminating same from our Award made on June 3rd—otherwise the Arbitration stands."

No further action appears to have been taken by either party until the complaint in the suit herein was filed December 23, 1946.

The parties stipulated, in addition to the above letters, that Sections 430–7 and 430–22 of the 1943 Remington Code Supp. of Washington, as amended by the 1947 Supplement, relative to arbitration, be admitted in evidence; and that respondent—"* * never received any notice of the time and place of the hearing before the Board of Arbitrators except as shown by the award herewith admitted." (copy above) and respondent—

"* * * never appeared before said Board in person and they were never represented before said Board by attorney or their representative except as shown by the exhibits and award therein admitted.

"That the only claim on the part of * * * (appellant) of which * * * (respondent) ever had knowledge was the statement of $1250.00 as a differential in grade of peas as appears in * * * (appellant's) letter of April 30th, 1946 and the * * * (respondent) were denied by the Board of Arbitration the right to examine the statement made to the Board by * * (appellant) except as shown by exhibits and award heretofore admitted."

The trial court made findings of fact and conclusions of law in line with the last portion of the stipulation referred to and stated: "The Court takes judicial notice of the commercial custom which requires the buyer to pay all expenses of letters of credit necessitated by sales contracts." And that the stipulation and pleadings provided no basis for recovery by appellant and entered judgment in favor of respondent and its costs.

Respondent's entire defense is based upon the proposition that appellant's claim for the cost of the letter of credit was not included in the submission to the Board of Arbitration; they had no notice of appellant's claim, except as to the $1250 and no notice of the time of hearing; and that the award as to the expense for the letter of credit is void and may, therefore, be attacked herein.

The previous decision herein definitely established that the trial court had jurisdiction of the parties and subject matter of this action, as in the nature of a suit to enforce a foreign judgment, and as the law of the case that technical precision is not required in an arbitration submission and arbitrators are not required to find

facts or give reasons for their award; that the submission rather than the award controls the question of what matters are submitted to arbitration; that the law favors arbitration, and arbitration proceedings are before a tribunal selected by the parties in lieu of an action or proceeding for a judgment, thus their award is in the nature of a judgment; arbitration's objective being to avoid the delay, expense and vexation of ordinary litigation; it is a substitute for an action in court; that the decision of the arbitrators on matters of law and fact is conclusive and all matters in the award are then considered res judicata on the theory the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy, and this is true even in a case where one of the parties neglected to present portions of his claim. "He had his chance, and, after the award, was concluded thereby, and could secure no relief." And that a party should call to the tribunal a jurisdictional matter.

The Washington statute admitted in evidence, Remington Code Supp. of 1943, is as follows: Sec. 430–15. "At any time within one (1) year after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the Court for an order confirming the award, and the Court shall grant such an order unless the award is vacated, modified, or corrected, as provided in sections 16 and 17. Notice in writing of the motion must be served upon the adverse party, or his attorney, five (5) days before the hearing thereof. The validity of an award, otherwise valid, shall not be affected by the fact that no motion is made to confirm it."

The record does not disclose that an application for confirmation of the award was made. By reason of the last sentence in Section 430–15, however, such application does not appear to be obligatory. Section 430–17 provides as follows:

"In any of the following cases, the Court shall, after notice and hearing, make an order modifying or correcting the award, upon the application of any party to the arbitration:

\* \* \* \* \* \*

"(b) Where the arbitrators have awarded upon a matter not submitted to them."

Section 430–18 requires that a notice of motion to vacate, modify or correct an award shall be served upon the adverse party, or his attorney, within three months after a copy of the award is delivered.

Section 430–22 is as follows: "An appeal may be taken from any final order made in a proceeding under this act, or from a judgment entered upon an award, as from an order or judgment in any civil action."

Respondent took no steps as thus contemplated and provided for in the statute. It did, however, as disclosed by the above correspondence, write both appellant and the chairman of the Board of Arbitration urging the item of expense in procuring

the letter of credit was not submitted. It thus called upon the Board to consider whether or not this had been submitted and did nothing thereafter though the Chairman of the Board of Arbitration unequivocally stated in the letter of August 26, that if respondent did not furnish a certified letter from appellant withdrawing such claim, "the arbitration stands."

Though respondent was not notified of the time of the hearing and was not present and had not received a specific statement of appellant's claim, it knew immediately following the making of the award by the arbitrators June 3 that the Board had included in the award the item for the cost of securing the letter of credit. ·

 Section 430–17(b) of the Washington statute above noted and which by stipulation, is in this case, gave respondent the right and immediate opportunity to have the questioned item, if improperly included, stricken by the courts of Washington. It had already notified the Board of Arbitration that respondent considered this item had not been submitted. The Board had unequivocally stated in the letter of August 26 that if respondent did not furnish a certified letter from appellant withdrawing such item, "the arbitration stands." By reason of the law of the case as established on the previous appeal, this in effect became a judgment which had passed not only initially upon the matter submitted, but by reason of respondent's direct challenge ruled this item had been presented and,

therefore, was within the jurisdiction of the Board's scope of arbitration. This rule in Baldwin v. Anderson, 50 Idaho 606, 299 P. 341, 344, in the series hereafter further adverted to, is poignant: "We find the trial court, upon the motion for judgment on the bond, had jurisdiction of the parties and jurisdiction of the subject-matter; that an issue was presented and it had jurisdiction to construe the undertaking and decide the issue which its judgment assumes to decide. It follows the judgment was not void, even if erroneous in the construction, and that the trial court committed error in annulling and vacating it as void." So, here the Board passed upon the scope of submission and had power and authority so to do. Republic of Colombia v. Cauca Co., 4 Cir., 106 F. 337 at page 339, Id., 4 Cir., 113 F. 1020.

 The general rule is that in an action on a foreign judgment, only defenses available to defeat recovery on a domestic judgment may be interposed. 50 C.J.S., Judgments, p. 449, § 874.

There is no contention the Board could not have had jurisdiction to pass on this item. In other words, it is not a question of the Board's general jurisdiction, but only of this particular item having been submitted. The parties were free to present anything they wanted to present. H. S. Cramer & Co., Inc. v. Washburn-Wilson Seed Co., supra.

 There is a well recognized distinction between an assumed jurisdiction and

exercise of judicial determination thereunder, and specifically passing on questions when presented and particularly decided, conceding and the authorities so indicate, that in the former situations jurisdiction may be later and collaterally attacked, but under the latter, unless the procedure outlined and provided by statute is followed, the determination by the tribunal passing on the question becomes res judicata and final, and may not be re-litigated or questioned. This case falls under the latter class.

Respondent presented to the Board the same challenge now interposed. The Board rejected respondent's claim that it had gone outside the issues as presented for arbitration. Respondent did not further question such determination and pursue the course outlined by the Washington statutes and thus, the available remedy.

Parenthetically, if the arbitration proceedings were properly before us for review, we would unequivocally say they were incorrectly conducted. But respondent had an immediate available remedy to correct any errors and did not take advantage of such proper reviewing procedure. As stated in the learned note to an article hereinafter noted, 53 Harvard Law Review 652 at 658, proper procedure for attacking the inclusion of the letter of credit item was by review in and under the Washington statute, of the Board's action.

Under these circumstances, we believe the principle announced in Bernhard v. Idaho Bank & Trust Co., 21 Idaho 598, 123 P. 481, 482, Ann.Cas.1913E, 120, is controlling, thus:

"It is contended by counsel for appellant that, as appellant appeared specially only in making the motion in the original case to set aside the judgment on the ground that the court had no jurisdiction of the person of the appellant, the decision of said motion was not res adjudicata, and that it still left the matter open for the appellant to maintain this action to enjoin the collection of said judgment. It would appear on that motion the only question presented was whether the court had jurisdiction to enter said judgment. We have a right to and do presume that the question of the appearance of said defendant in that action was fully presented to the trial court on that hearing, and, since the motion was overruled, the court must have come to the conclusion that the court had obtained jurisdiction to enter said judgment against the appellant. The authorities seem to be harmonious and in perfect accord in such cases, to the effect that the decision of the court upon the motion to vacate the judgment on the ground that the court did not have jurisdiction to enter it is a settlement of the rights of the parties upon the question of jurisdiction, subject only to an appeal.

"In McCord v. McCord, 24 Wash. 529, 64 P. 748, it was held that where a party fails to appeal from an order refusing to set aside a judgment, he has lost his rem-

edy, and said: 'The ruling of the court in this respect was appealable. It is said by this court in Chezum v. Claypool, 22 Wash. 498, 61 P. 157, 79 Am.St.Rep. 955, that where the statute affords a full, complete, and adequate remedy against an illegal judgment, by authorizing the aggrieved party to proceed by motion to vacate and set aside, and permitting an appeal from any order entered upon such motion, one who has attacked a judgment by motion to vacate, and has failed to prosecute an appeal from the denial of his motion, cannot subsequently maintain an action to cancel the judgment, since the question of the validity of the judgment is res adjudicata.'

"In Ward v. Derrick, 57 Ark. 500, 22 S.W. 93, it was held that the chancery court has no jurisdiction to review the action of the circuit court in refusing to set aside one of its judgments; the remedy of the party aggrieved being an appeal to the Supreme Court.

"In the case of [Galveston H. & S. A.] Ry. Co. v. Ware, 74 Tex. 47, 11 S.W. 918, it is said: 'We are of the opinion, however, that the general rule of equity should apply, and that if the defendant in the void judgment has had an opportunity to avail himself of a legal remedy to vacate it and has neglected to make use of it, relief by injunction should be denied him.'

"In this state the appellant had a choice between two remedies, and he chose to file his motion to vacate the judgment in the case in which the judgment was rendered upon the same facts as pleaded in the complaint in the action involved, and the court after hearing the motion decided the facts against the appellant, holding that the judgment was not void, and the order so holding was appealable. But appellant refused to exercise his right of appeal and brought this suit in equity to enjoin the collection of said judgment. He had his day in court in that action, and the decision of that motion upon the question of jurisdiction was res adjudicata. The appellant had the right either to attack said judgment by motion in the original case or by bringing this action to enjoin or to have it set aside. If he proceeded by motion and the court decided against him, the decision of that question, until reversed upon appeal, is final and binding on the parties."

Continuing a review of further authorities, the court thus concluded;

"The question as to whether the court had jurisdiction of the appellant in the action referred to was fairly and squarely presented on said motion to set aside said judgment. That being true, its decision therein was final, subject only to an appeal, and is res adjudicata as between the parties, and this action cannot be maintained to enjoin the collection of said judgment.

"Under the law two remedies were open to the appellant in this matter: He could either move in the original action to have the judgment set aside on the ground that the summons had not been served on him

and that the court had acquired no jurisdiction of his person, or he could have instituted this action to have said judgment set aside and to enjoin the collection of it. He made his selection, and, having proceeded by motion in the original action to have the judgment set aside, selected that as his remedy, and when the court decided the motion against him, the only recourse he had left was to appeal. It was then too late for him to abandon that remedy and pursue the remedy he is attempting to pursue in the action at bar."

This decision has been followed with approval on this point in King v. Richardson, 54 Idaho 420, 33 P.2d 1070.

Peri v. Groves, 183 Misc. 579, 50 N.Y.S. 2d 300, 308, reviewing at length and discussing and laying down the principle that the issue of jurisdiction may not be re-litigated and in connection with suits upon a foreign judgment, thus clearly epitomizes the controlling proposition: "There is, however, a principle of law which has as its basis the view that it is undesirable to allow the issue of jurisdiction to be litigated and re-litigated; that it is sounder policy to have repose in such matters. See the note entitled Res Judicata and Jurisdiction: The Bootstrap Doctrine, 53 Harv. L.Rev., 652. The doctrine in substance amounts to this: that the decision of a court, on a special as well as a general appearance, that it has jurisdiction, will not be allowed to be the subject of collateral attack but will be treated as res judicata. The cases range from those which declare that such a determination of jurisdiction may be treated as res judicata to those which hold that it must be treated as such and the judgment based thereon afforded full faith and credit. See Tatum v. Maloney, 226 App.Div. 62, 234 N.Y.S. 614, and the cases therein discussed." The court there holds the 14th Amendment or due process gives no right to re-litigate. This case is exceptionally pertinent because it relies very largely upon Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 51, 84 L.Ed. 85, 1034, which interpreted and approved a decision by this court, Mason v. Pelkes, 57 Idaho 10, 59 P.2d 1087, clearly indicating when the question of jurisdiction as between conflicting judgments in separate and foreign jurisdictions must end. The Treinies case in turn followed with approval American Surety Co. of New York v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 102, 77 L.Ed. 231, 86 A.L.R. 298, which in turn likewise interpreted and culminated a series of decisions by this Court involving the same principle, i. e., as to when the matter of jurisdiction must be left at rest.[1] The Treinies case thus emphatically concluded: "One trial of an issue is enough. The principles of res judicata apply to questions of jurisdiction

---

[1]. Baldwin v. Singer Sewing Mach. Co., 49 Idaho 231, 287 P. 944; Baldwin v. Anderson, supra; Baldwin v. Anderson, 51 Idaho 614, 8 P.2d 461; Baldwin v. Anderson, 52 Idaho 243, 13 P.2d 650.

434

as well as to other issues,' as well to jurisdiction of the subject matter as of the parties."

■ The American Surety Company case considered actions between separate jurisdictions, i. e., Federal and State, and thus declared the principle applicable herein: "The opportunity afforded by state practice was lost because the surety company inadvertently pursued the wrong procedure in the state courts. Instead of moving to vacate, it should have appealed directly to the state Supreme Court. When later it pursued the proper course, the time for appealing had elapsed. The fact that its opportunity for a hearing was lost because misapprehension as to the appropriate remedy was not removed by judicial decision until it was too late to rectify the error does not furnish the basis for a claim that due process of law has been denied. Compare O'Neil v. Northern Colorado Irrig. Co., 242 U.S. 20, 26, 37 S.Ct. 7, 61 L.Ed. 123 [128]. Having invoked the state procedure which afforded the opportunity of raising the issue of lack of notice, the surety company cannot utilize the same issue as a basis for relief in the federal court. Federal claims are not to be prosecuted piecemeal in state and federal courts, whether the attempt to do so springs from a failure seasonably to adduce relevant facts, as in Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 [979]; or from a failure season-ably to pursue the appropriate state remedy."

We can appropriately paraphrase the last two sentences in the foregoing quotation: "Having invoked the state procedure (having applied to the Board of Arbitration for relief from what it considered an unjustified inclusion) which afforded the opportunity of raising the issue of lack of notice, (statutes of Washington authorizing appeal to the Superior Courts of that State where all phases of the involved controversy could be determined) the Surety Company (respondent herein) cannot utilize the same issue as a basis for relief in the federal court. (i. e., herein suit upon the arbitration award)", and the balance of the last quoted sentence completely clinches the matter. While these cases did not involve arbitration, the principle is the same.

Other authorities recognizing and approving our conclusion are: Serpell-Winner-Jordan Inc., v. Crete Mills, 8 Cir., 51 F.2d 1028, 80 A.L.R. 716; Schaeffer v. Schaeffer, 128 Conn. 628, 25 A.2d 243 at page 245; Drake v. Drake, 187 Ga. 423, 1 S.E.2d 573 at page 578; Dyal v. Dyal, 187 Ga. 600, 1 S.E.2d 660; Pratt v. Miedema, 311 Mich. 64, 18 N.W.2d 279; John Simmons Co. v. Sloan, 104 N.J.L. 612, 142 A. 15.

■ We are not holding that arbitrators are not bound by the agreement of submission, merely holding that when the

scope of submission is expressly questioned as a jurisdictional matter and the Board acts, the statutory means of testing their ruling must be followed and their actions cannot later be collaterally attacked in a suit in a foreign jurisdiction to enforce the award, under the guise of thus again initially questioning jurisdiction as to what was submitted. Short v. Thompson, 56 Idaho 361 at page 378, 55 P.2d 163; Horn v. Cornwall, 65 Idaho 115 at page 120, 139 P.2d 757. "'The award of arbitrators, acting within the scope of their authority, determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment, until it is regularly set aside or its validity questioned in a proper manner. * * *'" H. S. Cramer & Co., Inc. v. Washburn-Wilson Seed Co., supra, 68 Idaho at page 422, 195 P.2d at page 350.

Since, therefore, respondent may not now question the validity of the award because it did not timely pursue the appropriate remedy, it having been held in the previous appeal in this case that the trial court herein had jurisdiction of this suit, the judgment is reversed and cause remanded with directions to the trial court to enter judgment in favor of appellant. Costs awarded to appellant.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.