UNITED STATES v. ENNIS et al.

(Circuit Court, D. New Jersey.    August 24, 1904.)

1. UNITED STATES—WITHHOLDING AMOUNT OF SET-OFF AGAINST CLAIMANT—CONSTRUCTION OF STATUTE.

Act March 3, 1875, c. 149, 18 Stat. 481 [U. S. Comp. St. 1901, p. 746], which requires the Secretary of the Treasury, when any claim allowed against the United States is presented for payment, to withhold therefrom the amount of any debt due from the claimant to the government, does not create a lien on the money due to the claimant in favor of the government.

2. SAME—ACTION ON CONTRACTOR'S BOND—NEGLIGENCE OF GOVERNMENT OFFICERS AS DEFENSE.

The failure of the Treasury Department to withhold any part of a payment due to a government contractor on account of a claim of the United States against him for a prior breach of the contract, as authorized and required by Act March 3, 1875, c. 149, 18 Stat. 481 [U. S. Comp. St. 1901, p. 746], does not release the sureties on the contractor's bond from liability for such claim.

At Law.    On demurrer to plea.

Theodore B. Booraem, for plaintiff.
Herbert Green, for defendants.

LANNING, District Judge.    By the declaration filed in this case the plaintiff avers that the defendants, Joseph E. Ennis, Thomas Dennin, and Justus J. Tryon are jointly indebted to it upon a certain sealed obligation executed by the defendants, and dated February 14, 1902, whereby they have acknowledged themselves bound to the United States of America in the sum of $4,000, to be paid to the United States of America or its authorized agent as liquidated damages; that the obligation is subject to the condition that if Joseph E. Ennis, his heirs, executors, or administrators, should well and truly execute a certain contract, annexed to the obligation, which he had entered into with Capt. William M. Folger, U. S. N., Inspector of the Third Lighthouse District, for and in behalf of the United States, by which he covenanted and agreed to furnish and deliver fuel, according to all the conditions of the contract, then the obligation should be void, but otherwise should remain in full force and virtue; that by the contract annexed to the obligation Ennis covenanted and agreed to and with Capt. Folger to furnish and deliver, in good order and condition, all the fuel that might be called for by Capt. Folger for the supply of the lighthouse vessels and stations in the Third Lighthouse District during the fiscal year ending June 30, 1903, the said fuel to be furnished in such quantities and at such times during said fiscal year as Capt. Folger might require, and that Capt. Folger, for and in behalf of the United States of America, agreed to pay

to Ennis, for all fuel so delivered, accepted, and receipted for, the following sums: for anthracite egg coal of best quality, $5.03 per. ton of 2,240 pounds, delivered at the Lighthouse Depot, New London, Conn., and for anthracite stove coal of best quality, $5.34 per ton of 2,240 pounds delivered at the same depot. The breach averred is that on November 20, 1902, Capt. Folger demanded of Ennis the delivery of 200 tons of anthracite egg coal and 100 tons of anthracite stove coal at the above-mentioned depot on or before December 15, 1902, and that Ennis failed to comply with the demand. The summons in the case was served only on the defendants Dennin and Tryon, the other defendant, Ennis, not being found and not having appeared.

The first plea of the defendants who have appeared is the general issue. Their second is a special plea, in which they allege that at divers times after December 15, 1902, and within the fiscal year ending June 30, 1903, Capt. Folger demanded of Ennis the delivery, under the contract above mentioned, of certain quantities of coal, which Ennis furnished as demanded, amounting in value to the sum of $4,204.30; that the plaintiff had a lien upon the moneys so due from it to Ennis, by which it might have enforced the payment of whatever was due to the plaintiff on account of the failure of Ennis to supply the coal demanded on November 20, 1902; that it was the duty of the plaintiff to enforce its lien; that instead of so doing, and in disregard of its duty, and without the consent or knowledge of the defendants Dennin and Tryon, the plaintiff waived its security, and paid to Ennis the above-mentioned sum of $4,204.30. To this special plea the plaintiff has demurred.

The defendants insist that the plea is authorized by the act of March 3, 1875, c. 149, 18 Stat. 481 [U. S. Comp. St. 1901, p. 746], which is as follows:

"When any * * * claim duly allowed by legal authority shall be presented to the Secretary of the Treasury for payment, and the plaintiff or claimant therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Secretary to withhold payment of an amount of such * * * claim equal to the debt then due to the United States; and if such * * * claimant assents to such set-off, and discharges * * * an amount * * * equal to said debt or claim, the Secretary shall execute a discharge of the debt due from the plaintiff to the United States. But if such * * * claimant denies his indebtedness to the United States, or refuses to consent to the set-off, then the Secretary shall withhold payment of such further amount of such * . * * claim as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Secretary to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch, and if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Secretary with six per cent. interest thereon for the time it has been withheld from the plaintiff."

The act does not create a lien in favor of the government. It does not purport to do so. It merely prescribes the procedure for enforcing a set-off. It imposes upon the Secretary of the Treasury the duty of deducting from the claim of a creditor of the gov-

ernment any counterclaim of the government, and if the creditor will not consent to such set-off, then the Secretary is required to cause legal proceedings to be commenced, to the end that the counterclaim may be put into judgment and judicially enforced. The act is evidently intended for the security and protection of the government, but it forms no part of the contract between the government and the sureties on a bond given to the government. It is a well-settled rule of law, founded on principles of public policy, that the government does not agree with its contractors or their sureties that its public officers will perform their duties. In Hart v. United States, 95 U. S. 316, 24 L. Ed. 479, where the sureties upon a distiller's bond pleaded to a suit brought by the United States to recover the tax on spirits distilled by the principal obligor that the tax sued for was a first and paramount lien on the spirits, and that the collector of internal revenue permitted the principal obligor to remove the spirits from the bonded warehouse without payment of the tax, and without the knowledge or assent of the sureties, it was held that the plea was bad. The court declared that the collector had no authority to permit such removal before payment of the tax, and that his permission for such removal could not bind the government. "A government," said the court, "may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect. Here the surety was aware of the lien which the law gave as security for the payment of the tax. He also knew that, in order to retain this lien, the government must rely upon the diligence and honesty of its agents. If they performed their duties and preserved the securities, it inured to his benefit as well as that of the government; but if by neglect or misconduct they lost it, the government did not come under obligations to make good the loss to him, or, what is the same thing, release him pro tanto from the obligation of his bond. As between himself and the government, he took the risk of the effect of official negligence upon the security which the law provided for his protection against loss by reason of the liability he assumed." This language is peculiarly applicable to the case in hand. When Dennin and Tryon became sureties for Ennis, they did so with knowledge that any remedy which the act of March 3, 1875, might give to the government by way of set-off or even of lien against Ennis would, if enforced, inure to their benefit; but in becoming such sureties they assumed the risk of official negligence in the enforcement of the provisions of the statute.

The demurrer will be sustained, with costs against the defendants.