PUTNAM TOOL COMPANY, a Michigan Corporation, in its own right and as successor in interest to E. C. Putnam and F. J. Nefske, D/B/A Putnam Tool Company, a Co-partnership, and E. C. Putnam and F. J. Nefske, D/B/A Putnam Tool Company, a Co-partnership, for the use and benefit of Putnam Tool Company, a Michigan Corporation,

v.

The UNITED STATES.

No. 186–56.

United States Court of Claims.

Jan. 16, 1957.

Fuller Holloway, Washington, D. C., for plaintiff. Lee I. Park, Charles D. Hamel, K. Martin Worthy, Fuller Holloway, and Hamel, Park & Saunders, Washington, D. C., were on the brief.

James H. Prentice, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff is a corporation which has succeeded to the rights and obligations of a former partnership. In this opinion the word *plaintiff* will be used to designate the partnership, and, in its turn, the corporation.

The plaintiff sues to recover a sum which represents the difference between the 4 percent interest which it says it should have been charged, and the 6 percent interest which it was in fact charged, on its indebtedness to the Government resulting from a renegotiation of war contracts performed by it for the Government.

By a notice dated February 27, 1946, the War Contracts Price Adjustment Board notified the plaintiff that it had adopted the determination made by its subordinate board that the plaintiff had realized excessive profits in the year 1943 in the amount of $610,000, and that, recomputing the plaintiff's taxes to take account of the reduction of its income by that amount, it owed the Government $468,175. The notice demanded the payment of the latter sum, and said that interest at 6 percent would accrue on that sum after March 14, 1946.

On May 23, 1946, the plaintiff filed a petition in the Tax Court of the United States, the proper tribunal for such a proceeding, seeking a redetermination and reduction of the amount of its asserted excessive profits. On July 30, 1947, the Government brought a suit against the plaintiff in the United States District Court for the Eastern District of Michigan, to recover the amount of the plaintiff's renegotiation indebtedness. While that suit was pending, the Government set off in 1947 and 1948, three small sums otherwise due the plaintiff against the renegotiation indebtedness; on May 15, 1950, the plaintiff paid the Government $150,000 to apply on the indebtedness; and on June 2, 1950, the plaintiff paid the Government $434,176.10 as full payment of the remaining principal of the indebtedness, and accrued interest at 6 percent. On that same day, June 2, the Government's suit in the District Court was dismissed by stipulation of the parties.

When the plaintiff paid the Government the $434,176.10 on June 2, 1950, it wrote a letter saying:

"There is tendered herewith a certified check in the amount of $434,176.10 in full payment for all liability of the Putnam Tool Company for renegotiation liability, together with interest thereon as of this date. This payment is not made in recognition of the correctness of the determination nor in derogation of our right to continue to contest the validity of the determination if we so desire in the Tax Court of the United States."

The Tax Court proceeding was dismissed on June 13, 1950, on motion of the parties.

The plaintiff says that it paid interest at the rate of 6 percent because of the compulsion of an order of the War Contracts Price Adjustment Board, under the authority of an invalid renegotiation regulation fixing the rate of interest on unpaid renegotiation debts at 6 percent. It says that a fair and equitable rate of interest would be not more than 4 percent, and it sues for the difference, which amounts to $39,497.11.

In our decisions in Eversharp, Inc., v. United States, 125 F.Supp. 244, 129 Ct.Cl. 772 and 147 F.Supp. 502, July 12, 1956, we held that the renegotiation regulation fixing the 6 percent rate of interest was invalid. Congress did not prescribe a rate of interest, nor authorize the War Contracts Price Adjustment Board to do so. But the Government is entitled to interest on debts owing to it. In the absence of a legislative, or a valid executive prescription of a rate of interest, the rate must be deter-

mined by the court, if the question of the rate is disputed and litigated. If a court fixes the rate, it does so on the basis of what is reasonable in the circumstances. In litigation over renegotiation debts, different District Courts, regarding the 6 percent regulation of the War Contracts Price Adjustment Board as invalid, have determined various rates of interest varying from 6 percent down, to be reasonable. In the second Eversharp case we determined 4 percent to be reasonable.

In the absence of a determination of a reasonable rate of interest by a court, we know of no other way in which the rate can be determined and the debt liquidated than by the action of the parties. In this case, for example, the Government demanded 6 percent, and the plaintiff paid it. It was not unlawful for the Government to demand 6 percent, since the question of what rate would be reasonable was an arguable question. The reason, no doubt, for the Government agency's demanding 6 percent was that it thought that that rate was prescribed by a valid regulation. And the reason that the plaintiff paid the 6 percent may well have been the same. Do these circumstances give the plaintiff the right to litigate the reasonableness of the rate in this suit in this court for the return of a part of the interest paid?

Other contractors whose profits had been renegotiated, and from whom interest at 6 percent had been demanded, refused to pay it and, when sued by the Government, succeeded in persuading the court that a lesser rate of interest was reasonable. The plaintiff could have done the same. In fact, the Government did, as we have seen, sue the plaintiff in the District Court in 1947, and that suit was pending for some three years. In the meantime, the plaintiff had a proceeding pending in the Tax Court for a redetermination of the principal of the debt. Then, in June 1950, the plaintiff paid the entire balance of the principal and interest demanded by the Government, and both court proceedings were dismissed by stipulation of the parties.

We think that the plaintiff's payment to the Government was a voluntary payment, in the legal sense, and that it cannot recover a part of it in this suit. What apparently happened was that it had not occurred to the plaintiff that it might successfully dispute the interest charge, until after it had paid the Government's claim. Two years later the decision in United States v. Abrams, 6 Cir., 197 F. 2d 803, certiorari denied 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664, came out, the first decision that the 6 percent renegotiation regulation was invalid. One cannot, in the absence of fraud or duress or mistake of fact or reservation agreement, or, perhaps, other special circumstances, pay a claim and later sue to recover the amount paid.

The plaintiff alleges, as we have said, that there was compulsion upon it which caused it to pay the claim. The debt was large, and the interest, at whatever rate, was accruing in a large amount. That is, however, true of any interest-bearing debt or asserted debt, and there would seem to be no way to stop the interest by payment, and at the same time preserve the right to recover all or a part of the payment, except by inducing the creditor to agree that a suit to recover the payment might be brought. That is what was done in the Eversharp case, supra. The fact that interest will or may accrue upon a claim, if it is not paid, is not legal duress which will make its payment recoverable.

The plaintiff points to the letter that it wrote when it made its payment in full. We have quoted the letter above. It said:

"This payment is not made in recognition of the correctness of the determination, nor in derogation of our right to continue to contest the validity of the determination if we so desire in the Tax Court of the United States."

The plaintiff says that this letter preserved its right to prosecute the instant suit. We think the letter had no relation to interest, the subject matter of the instant suit. The Tax Court's function

was to examine the correctness of the administrative determination of the amount of the excess profits. It had nothing to do with determining the correct rate of interest if the renegotiation debt was not paid. We need not decide whether or not an attempted unilateral reservation of a right to sue to recover a payment made would be effective, since the plaintiff's letter did not purport to be a reservation of any right except to pursue its pending proceeding in the Tax Court. Even this right was voluntarily abandoned a few days later by the dismissal of the proceeding upon the motion of both parties.

The defendant's motion to dismiss the plaintiff's petition is granted.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.