**UNITED STATES of America,**
Libelant-Appellant,

v.

**EASTPORT STEAMSHIP CORPORA-TION,** Respondent-Appellee.

No. 6, Docket 24448.

United States Court of Appeals
Second Circuit.

Argued Nov. 6, 1957.

Decided May 6, 1958.

the Eastport Steamship Corporation under a charter party entered into in 1947. Exceptive allegations to the libel were filed by Eastport, alleging that the Government's claim was barred by *res judicata,* and that the sums sought to be recovered had been voluntarily paid by the Government. The District Court sustained the exceptive allegations and dismissed the libel. 142 F.Supp. 375.

The basis for the Government's claim is a charter party under which several vessels owned by the Government were chartered to Eastport. By the terms of the agreement the charterer agreed to pay additional charter hire upon the occurrence of certain contingencies. Eastport determined that the Government was entitled to additional charter hire in the amount of $78,024.01 and paid that sum. According to the Government's computations, however, additional charter hire was due to the extent of $109,126.72 so that Eastport's payment left an indebtedness under the charter party of $31,102.71. Approximately one year after the parties entered into the charter party, Eastport, in an unrelated transaction, purchased the S.S. Opie Read from the Government under a contract of sale [1] which provided that the purchase price then paid was to be reduced by an amount equal to the cost of repairs necessary to enable Eastport to obtain certificates of classification and registration for the vessel. Upon refusal by the Government to pay a claimed reduction, Eastport brought suit in the Court of Claims and was awarded a judgment for $54,097.16.[2] 128 Ct.Cl. 778. This judgment was duly presented to the Comptroller General for payment, but in view of the Government's claim against Eastport under the charter party, the Comptroller General paid only $22,899.45. The balance, the alleged indebtedness of $31,102.71 plus $100 estimated cost of litigation necessary to obtain a judgment on the government's claim, was withheld

George Cochran Doub, Asst. Atty. Gen., Paul W. Williams, U. S. Atty., Paul A. Sweeney, Benjamin H. Berman, Herman Marcuse, Attys., Dept. of Justice, Washington, D. C. (Leavenworth Colby, Chief, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., of counsel), for libelant-appellant.

Zock, Petrie, Sheneman & Reid, New York City, Kominers & Fort, Washington, D. C. (J. Franklin Fort, John Cunningham, Israel Convisser, Washington, D. C., Francis J. O'Brien, New York City, of counsel), for respondent-appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The Government commenced this suit in the Southern District of New York to recover charter hire allegedly owed by

---

1. Both the contract of sale and the charter party were authorized by the Merchant Ship Sales Act of 1946, 50 U.S.C.A. Appendix, §§ 1735–1746.

2. Chapter XII of the Supplemental Appropriations Act of 1955, 68 Stat. 827–828 appropriated funds for the payment of this judgment.

pursuant to 31 U.S.C.A. § 227.[3] That statute provides that when a judgment creditor of the United States is indebted to the Government the Comptroller General shall withhold payment of such portion of the judgment as is equal to the indebtedness (plus the estimated cost of litigation necessary to prosecute the Government's claim) and, unless the creditor agrees to a *pro tanto* discharge of the mutual claims, that the Comptroller General shall promptly institute legal proceedings to reduce the Government's claim to judgment. Provision is also made for the recovery of interest by the judgment creditor if the Government is unsuccessful in its action. Eastport refused to consent to the withholding, whereupon the Government commenced the present suit.

Subsequent to the withholding but prior to the commencement of this suit, Eastport brought an action on its judgment in the Court of Claims alleging the Government's failure to pay the balance of the judgment which that Court had awarded and demanding recovery thereof with interest. The Government moved to dismiss. It alleged that the Court of Claims had no jurisdiction on the grounds that 31 U.S.C.A. § 227 provided the exclusive procedure by which the propriety of the withholding could be determined; and because the withholding was

based upon a claim asserted under a maritime contract, and the district courts, as courts of admiralty, had exclusive jurisdiction over such contracts. The Court of Claims rejected each of these challenges to its jurisdiction and, in addition, determined that it had jurisdiction over a claim founded upon a judgment previously rendered by it. 130 F. Supp. 333, 131 Ct.Cl. 210. Thereupon, in an effort to avoid adjudication of its claim for additional charter hire in the Court of Claims, the Government paid the remainder of the judgment that Eastport had recovered previously and filed an answer setting up the defense of payment. Eastport moved to strike the answer as unresponsive because it failed to admit or deny Eastport's right to interest. The motion was sustained. The Court of Claims entered an order allowing the Government thirty days to amend its answer, in default of which the Government's liability for interest would be treated as admitted. 140 F.Supp. 773, 135 Ct.Cl. 175. Some time later the Government entered a confession of judgment for the interest Eastport demanded.

Prior to the confession of judgment but subsequent to the striking of the Government's answer in the Court of Claims proceedings, Eastport filed *its* exceptive allegations to the Government's libel in the District Court. The District

---

3. 31 U.S.C.A. § 227 reads:

"§ 227. Offsets against judgments against United States

"When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; and if such plaintiff assents to such set-off, and discharges his judgment or an amount thereof equal to said debt, the Comptroller General of the United States shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-

off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff."

Court sustained the allegations and dismissed the libel. It held that the Government could not assert its claim under the charter-party because payment of the withheld portion of the Court of Claims judgment was a "voluntary payment" of the claim for additional charter hire, and also because the failure to plead the claim as a counterclaim in the Court of Claims precluded its later assertion in another court.

*Voluntary Payment*

■ The District Court erred in its conclusion that payment of Eastport's original judgment was a "voluntary payment" by the Government of the Government's claim for additional charter hire. Under the doctrine of voluntary payment "One cannot, in the absence of fraud or duress or mistake of fact or reservation agreement, or, perhaps, other special circumstances, pay a claim and later sue to recover the amount paid." [4] The doctrine is applicable only when recovery is sought of a sum previously paid. McKnight v. United States, 1878, 98 U.S. 179, 25 L.Ed. 115, affords an excellent illustration. In that case the Government had paid a sum of money to the assignees of a contractor to whom the Government was indebted. Subsequently, relying upon the undisputed invalidity of the assignment, the Government sought to recover the amount paid. Recovery was denied on the ground of voluntary payment.

■■ In the present case the Government claims a balance due upon its charter party with Eastport. The payment which it made to Eastport was upon Eastport's judgment, arising from the purchase of the Opie Read, an entirely unrelated transaction. Under these circumstances the doctrine of voluntary payment has no application. Eastport contends, however, that voluntary payment of a debt without deducting from the amount paid any known and existing offsetting account bars a later recovery of the sum that should have been deducted. The contention is unsound. Although a debtor may have the power to withhold payment of his admitted debt, he is not compelled to do so under penalty of foregoing his unrelated claim. The case of Cleveland & Western Coal Co. v. Main Island Creek Coal Co., 6 Cir., 1924, 297 F. 60, relied upon by Eastport, is inapposite. There the payments were made under a contract without deducting amounts to which the debtor was entitled under the same contract. "The account was a single one; the payment was for the balance due as between the parties; * * *" 297 F. 60, 64. Cf. Nix v. Art Neon Co., 1940, 105 Colo. 562, 100 P.2d 165. Here, there was not a "single account" between the parties, nor did the Government's payment purport to establish a balance between them. The payment was made for the sole purpose of satisfying the first Court of Claims judgment.

The result is not altered by the fact that the Comptroller General has the duty under 31 U.S.C.A. § 227 to withhold payment of a judgment until the Government's claim against the judgment creditor is reduced to judgment.[5] By paying Eastport's judgment while the Government had a claim against Eastport the Comptroller General perhaps was guilty of a breach of duty toward the United States. Cf. United States v. Ennis, C.C. D.N.J.1904, 132 F. 133. Eastport sug-

---

4. Putnam Tool Company v. United States, 1957, 147 F.Supp. 746, 748, 137 Ct. Cl. 183; McKnight v. United States, 1878, 98 U.S. 179, 25 L.Ed. 115; Union Pacific Railroad Company v. Commissioners, 1878, 98 U.S. 541, 25 L.Ed. 196; Cunard S.S. Co. v. Elting, 2 Cir., 1938, 97 F.2d 373.

5. The Government urges that the sole purpose of the withholding is to provide security for the Government's claim and, consequently, that the Comptroller General has the power to release the security if and when he determines that the interests of the United States do not require security. Eastport, on the other hand, points to the language of the statute that "it shall be the duty of the Comptroller General * * * to withhold payment * * *" and concludes that the exercise of discretion is not authorized. We find it unnecessary to pass upon these conflicting assertions.

gests, however, that payment of the judgment was consistent only with an admission that the Government's claim against it was unfounded. Assuming, *arguendo,* that the Comptroller General had authority to make such an admission, payment of the judgment to Eastport does not constitute such an admission. The payment is equally consistent with an interpretation of the statute which is at variance with that contended for by Eastport. See note 5, supra.

*Res Judicata and Collateral Estoppel*

██ Eastport urges that the Government's confession of judgment in the Court of Claims bars the present suit under the doctrine of *res judicata.* It argues that the interest which it demanded might properly be awarded only if the Government's withholding was wrongful;[6] and since the withholding would have been wrongful only if the claim for additional charter hire lacked merit, the award of interest by the judgment of the Court of Claims was an adjudication of the invalidity of the Government's claim. Eastport fails to distinguish between, and thereby confuses, the doctrines of *res judicata* and collateral estoppel. The classic statement of these doctrines and the distinctions between them is found in Cromwell v. County of Sac, 1876, 94 U.S. 351, 352–353, 24 L.Ed. 195.

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." [7]

It is readily apparent that the doctrine of *res judicata*—a doctrine applicable only when the second suit is upon the same cause of action as that upon which the first suit was based—does not preclude the Government from maintaining the present suit. The cause of action which it asserts arises from an alleged breach of the charter-party between Eastport and itself. On the other hand, Eastport's second action in the Court of Claims was based upon a judgment in its favor; and since interest was sought and awarded, perhaps also on the action of

---

6. As to the duty of the Government to pay interest upon a judgment rendered against it, *consult discussion at page* 804 of 255 F.2d, infra.

7. See also Commissioner v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; United States v. Moser, 1924, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; Tait v. Western Maryland Ry. Co., 1933, 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Southern Pacific Railroad v. United States, 1897, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1 (1942); Restatement of Judgments § 68, comment a.

the Comptroller General in withholding payment of a portion of that judgment. In either event, the cause of action asserted by the Government in the District Court is not the same as that asserted by Eastport in the Court of Claims.

The doctrine of collateral estoppel is likewise inapplicable to the facts of the present case. The merits of the Government's claim for additional charter hire were never litigated in the Court of Claims. In the absence of such litigation and a consequent determination of the merits by that court, the judgment rendered has no collateral effect in this subsequent action commenced upon a different cause of action. See cases cited at note 7. Eastport's reliance upon Caprito v. United States, 5 Cir., 1954, 217 F.2d 783; Reynolds v. International Harvester Co., D.C.N.D.Ohio 1955, 141 F.Supp. 371; and Brigido Urbino v. Porto Rico Ry. Light & Power Co., D.C. Puerto Rico 1946, 68 F.Supp. 841, is misplaced. In each of those cases an action was held barred by *res judicata* because it was based upon the same cause of action which had previously merged into a judgment. In this case Eastport attempts to plead the prior judgment in a suit based upon a different cause of action. Eastport also contends that the Court of Claims by awarding interest on the judgment necessarily determined that the Government had no claim for additional charter hire. This contention is also wide of the mark. In United States v. International Bldg. Co., 1953, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182, the Supreme Court held that a judgment by confession could not be used as the basis for collateral estoppel even as to matters which were "necessarily determined" by a prior judgment. Cf. Fruehauf Trailer Co. v. Gilmore, 10 Cir., 1948, 167 F.2d 324. The court relied upon the principle enunciated in Cromwell v. County of Sac that unless an issue is actually litigated, it cannot provide the basis for an estoppel in a subsequent case based upon another cause of action. The policy underlying this limitation upon the

effect of a judgment is aptly stated in *County of Sac*:

"Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction." 94 U.S. at page 356. See Restatement of Judgments § 68, comment a.

Similarly, in the present case, considerations other than the merit or lack of merit in its claim led the Government to confess judgment for the interest demanded. Unworthy as these considerations may have been, the Government should not be precluded under the doctrine of collateral estoppel from proving its claim in an independent action. And, it is quite clear that the Government by confessing judgment did not intend an admission that it had no valid claim under the charter party.

The merits of the Government's claim not having been litigated in the Court of Claims, the doctrine of collateral estoppel has no bearing upon the assertion of the merits of the claim in the present suit. The judgment of the Court of Claims determined no more than that Eastport was entitled to interest upon its prior judgment.

*Compulsory Counterclaim*

From the above discussion it may be observed that in the absence of a statute or rule of court to the contrary, the sole limitation upon the piecemeal litigation of conflicting claims which arise out of a single litigious transaction or occurrence is that imposed by the doctrine of collateral estoppel. See Restate-

ment of Judgments § 58, comments b and c. Recognition of the interest of judicial administration in avoiding a multiplicity of actions each based upon the same facts has logically led to the adoption of statutes and court rules providing "for the effective settlement at one time of all disputes of which parts are already before the court." [8] Rule 17(a) of the Court of Claims is such a rule. Modeled after Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.—which, in turn, was based upon Equity Rule 30— Rule 17(a) requires the Government to plead as a counterclaim any claim which it has against the plaintiff "if it arises out of the transaction or occurrence that is the subject matter of the petition * * *" [9] Though not explicitly stated therein, it is well settled that the penalty for failure to comply with the rule is that an independent action will not subsequently lie upon a claim which should have been asserted as a counterclaim. 3 Moore's Federal Practice ¶13.12 (2d ed. 1948). In recognition of Rule 17(a) the District Court held that the failure of the Government to plead its claim for additional charter hire in the Court of Claims was a bar to the maintenance of the present suit.

[7] The Government urges that the action of the District Court in dismissing its libel on this ground was premature. The Government maintains that a compulsory counterclaim not pleaded comes within the scope of the judgment in the action in which it should have been interposed and thus becomes *res judicata.* However, because the dismissal of its libel in the District Court was prior to the rendition of the second judgment in the Court of Claims, the Government argues that the District Court acted too hastily in holding the Government's claim for charter hire barred by Rule 17(a).[10] We are unpersuaded by this argument. The compulsory counterclaim rule requires that once the action was commenced in the Court of Claims that court was the only proper forum for the adjudication of any claims by the Government arising out of the transaction or occurrence that was the subject matter of Eastport's petition. If the Government's claim for additional charter hire was a compulsory counterclaim in the Court of Claims, the dismissal of its libel by the District Court was proper even though no judgment had previously been rendered by the Court of Claims. E. J. Korvette Co. v. Parker Pen Co., D.C.S. D.N.Y.1955, 17 F.R.D. 267.

The Government's failure to plead its counterclaim is, of course, fatal to maintenance of the present suit only if the Court of Claims had jurisdiction over both the subject matter of Eastport's petition and the Government's claim for additional charter hire. Jurisdiction over the latter is conferred by 28 U.S.C. § 1503. And, the power of the Court of Claims to hear the issues raised by Eastport's petition may not be chal-

8. Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968, 973; see Blair v. Cleveland Twist Drill Co., 7 Cir., 1952, 197 F.2d 842; United States, to Use of and for Benefit of Foster Wheeler Corporation v. American Surety Co. of New York, D.C.E.D.N.Y.1938, 25 F.Supp. 700, affirmed 2 Cir., 142 F.2d 726.

9. Rule 17(a), 28 U.S.C. in its entirety, provides:
 "Rule 17. Counterclaims
 "(a) Compulsory Counterclaims. The answer shall state as a counterclaim any claim which at the time of serving the answer the defendant has against any plaintiff, if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action, and except that in any case, where the hearing in the first instance is limited to the issues of fact and law relating to the right of plaintiff to recover, defendant may plead such a counterclaim within 60 days after the Court shall have rendered judgment determining that plaintiff has a right to recover."

10. The Government admits that we should not reverse solely on this ground inasmuch as upon remand a dismissal could be based upon the judgment which has now been entered in the Court of Claims.

lenged in this suit. The doctrine of *res judicata* precludes collateral attack upon the Court of Claims judgment on the ground that that court lacked jurisdiction over Eastport's claims. After service upon it of Eastport's petition the Government appeared in the Court of Claims and moved to dismiss for want of jurisdiction. The two grounds upon which the motion was based were that 31 U.S.C.A. § 227 provided the exclusive procedure to contest a wrongful withholding, and that the claim upon which the withholding was based arose out of a maritime contract—the charter party—over which a court of admiralty had exclusive jurisdiction. The Court of Claims denied the motion, rejecting these challenges to its jurisdiction. 130 F. Supp. 333, 131 Ct.Cl. 210. Issues of jurisdiction may be, as any other matter, the subject of *res judicata,* and, having once litigated the jurisdiction of the Court of Claims, the Government is precluded from doing so now.[11] Suggestion has been made that the Court of Claims lacks jurisdiction to consider an action founded upon a judgment previously rendered by it. See Note, 56 Col.L.Rev. 274 (1956). This issue was not presented to the Court of Claims by these parties. Nevertheless, we need not inquire into the merit of this suggestion because collateral attack upon the Court of Claims judgment on this ground is also foreclosed. With few exceptions a collateral attack upon the subject-matter jurisdiction of a court in which both parties have appeared is prohibited notwithstanding the failure of the parties to litigate the issue.[12] The cases which have departed from this rule[13] merely establish that the policy underlying *res judicata* must at times yield to policies of greater importance.[14] The Court of Claims like all the inferior federal courts is indeed a court of limited jurisdiction. But its judgments are not open to collateral attack for that reason alone. As the Supreme Court pointed out in Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329, "the lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act."[15] If the

11. Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Massie v. Erie R. Co., 3 Cir., 1952, 196 F.2d 130; United States ex rel. Sutton v. Mulcahy, 2 Cir., 1948, 169 F.2d 94; Bretsky v. Lehigh Valley R. Co., 2 Cir., 1946, 156 F.2d 594. Cf. Jackson v. Irving Trust Co., 1941, 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297; Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231; Baldwin v. Iowa State Traveling Men's Ass'n, 1931, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244.

12. Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Dowell v. Applegate, 1894, 152 U.S. 327, 14 S.Ct. 611, 38 L.Ed. 463; Des Moines Navigation & Railroad Co. v. Iowa Homestead Co., 1887, 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202; M'Cormick v. Sullivant, 1825, 10 Wheat. 192, 6 L.Ed. 300; Ellis v. Cates, D.C.E.D.Va.1949, 88 F.Supp. 19, affirmed 4 Cir., 178 F.2d 791. Cf. Cook v. Cook, 1951, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146; Johnson v. Muelberger, 1951, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552; Coe v. Coe, 1948, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451; Sherrer v. Sherrer, 1948, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429.

13. E. g. United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; cf. Kalb v. Feuerstein, 1940, 308 U.S. 433, 60 S. Ct. 343, 84 L.Ed. 370.

14. See Peri v. Groves, Sup.1944, 183 Misc. 579, 50 N.Y.S.2d 300, 310; Boskey and Braucher, Jurisdiction and Collateral Attack, 40 Col.L.Rev. 1006 (1940); Restatement of Judgments § 10.

15. For an excellent critique of the distinctions between courts of general and limited jurisdiction, see the opinion of Judge Goodrich in United States v. Silliman, 3 Cir., 1948, 167 F.2d 607, 618–619.

804

Court of Claims exceeded the jurisdiction conferred upon it by Congress, the Government's remedy was to seek review in the Supreme Court. Cf. Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.

Finally, the Government challenges the District Court's determination that its claim for additional charter hire was a compulsory counterclaim to Eastport's demand for interest on the withheld portion of the judgment. A brief discussion of the duty of the Government to pay interest upon judgments rendered against it is a necessary background to determination of this problem. The award of interest by the Court of Claims against the Government is governed by 28 U.S.C. § 2516, subsection (a) of which provides:

> "Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof."[16]

In United States v. New York Rayon Importing Co., 1947, 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577, the Supreme Court held that the predecessor of § 2516(a) applied not only to original claims against the United States but also to judgments obtained against it. Although in that case the action in the Court of Claims was founded upon a judgment of the Customs Court, the rationale underlying the Supreme Court's decision applies equally to judgments rendered by the Court of Claims.[17] The parties do not maintain that a contract

existed whereby the Government was obligated to pay interest to Eastport, and the only Act of Congress under which Eastport asserted the right to receive interest from the Government was 31 U.S.C.A. § 227. As we noted previously, § 227 authorizes an award of interest only if it is determined that the claim on account of which the Government withheld payment of the judgment is without merit.

 We conclude that the District Court properly held that the Government's claim for additional charter hire was a compulsory counterclaim to Eastport's demand for interest. A counterclaim is compulsory under Rule 17(a) of the Court of Claims only if "it arises out of the transaction or occurrence that is the subject matter of the petition * * *" Rule 13(a), Fed.Rules Civ.Proc. contains identical language, and in applying Rule 13(a) we have stated that "In practice this criterion [of a compulsory counterclaim] has been broadly interpreted to require not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them." United Artists Corp. v. Masterpiece Productions, 2 Cir., 1955, 221 F.2d 213, 216. The logical relationship between Eastport's claim for interest and the Government's claim for additional charter hire is obvious. The former could not prevail unless the latter lacked merit. The situation presented is in many ways akin to that considered by the Supreme Court in Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, in which the Court held a counterclaim compulsory because "So close is the connection

---

16. Subsection (b) provides that:
"§ 2516. Interest on claims and judgments
* * * * *
"(b) Interest on judgments against the United States affirmed by the Supreme Court after review on petition of the United States shall be paid at the rate of four percent per annum from the date of the filing of the transcript of the judgment in the Treasury Department to the date of the mandate of affirmance. Such interest shall not be allowed for any period after the term of the Supreme Court at which the judgment was affirmed."

17. The Court of Claims has held that a judgment rendered by it carries no interest in the absence of a contract or Act of Congress making provision therefor. Moorman v. United States, 1949, 82 F. Supp. 1010, 1015, 113 Ct.Cl. 159. Cf. New York Central & H. R. Co. v. United States, 1888, 24 Ct.Cl. 22.

between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter * * * " In the present case, the failure of the Government's claim not only would have laid a foundation for Eastport's claim; it would have established it. Conversely, the failure of Eastport to establish its claim for interest would have established the Government's claim for additional charter hire. The issues raised by the respective claims were identical. The failure of the Government to plead its counterclaim could only result in the multiplicity of suits which it is the function of the compulsory counterclaim rule to avoid. See cases cited at note 8.

The Government, however, urges that Moore is less applicable to the situation here than Mercoid Corp. v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376. In Mercoid the defendant pleaded as a counterclaim the alleged misuse of a patent by the plaintiff. In a previous suit against the defendant for infringement of the patent the defendant did not plead the misuse as a counterclaim. The Supreme Court held that the counterclaim was merely permissive and hence that the failure to assert it in the first action did not preclude its assertion in the later action. In view of the criticism which the decision has received[18] and the failure of the Court to discuss the principles upon which the decision rests, we think that Mercoid cannot be taken as precedent for other than its own limited facts. The Government distinguishes Moore on the ground that the issue there was whether the District Court could take jurisdiction over the counterclaim since the rights asserted therein would not have supported independent federal jurisdiction, whereas in Mercoid the fact of independent federal jurisdiction was clear—as it is clear in the present case. From this difference the Government

would have us believe that the compulsory counterclaim rule, on the authorities, has been applied to fact situations where jurisdiction was an issue that it would not be applied to when jurisdiction was not an issue.

■ ■ This distinction urged by the Government bears no relation whatever to the purpose the Rule seeks to accomplish. The underlying purpose of the rule is to force disposition in one action of all claims which have arisen between the parties to that litigation. See cases cited at note 8. To accomplish this purpose claims not otherwise suable in a federal court are compelled to be the subject of a counterclaim to a cause of action properly brought in a federal court. Cf. Moore v. New York Cotton Exchange, supra. And also whenever a compulsory counterclaim is not pleaded in an action when it should have been pleaded the judgment entered in that action is clearly *res judicata* as to the merits of the unpleaded counterclaim. Ancillary jurisdiction is necessary to make the rule universal. The *res judicata* result is necessary to make the rule effective. Not otherwise would multiplicity of suits be avoided. There is no merit to this Government argument.

■ Also, and for substantially similar reasons we reject the Government's contention that the rule is no more than a matter of convenience which may be disregarded by the defendant unless there is a trial on the merits of the plaintiff's claim.

The Government earnestly contends that Rule 17(a) should not be used as a device to deny it the right to have its maritime contract construed in admiralty. Reliance is placed upon American Mills Co. v. American Surety Co., 1922, 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306, in which the Supreme Court, construing Equity Rule 30, held that an action at law need not be pleaded as a compulsory counterclaim to a bill in equity. The de-

18. See Douglas v. Wisconsin Alumni Research Foundation, D.C.N.D.Ill.1948, 81 F.Supp. 167; 1 Barron and Holtzoff,

Federal Practice and Procedure 799–802 (Rules ed. 1950).

cision, however, was expressly based upon the Court's belief that a contrary interpretation of the Rule would deprive a defendant of the trial by jury guaranteed by the Seventh Amendment. No similar constitutional guarantee is involved here. In addition, the Congress has specifically provided that the jurisdiction of the Court of Claims extends to "any set-off or demand by the United States * * *" 28 U.S.C. § 1503.

We conclude that the District Court correctly held that the Government was precluded from prosecuting its claim for additional charter hire by failure to assert that claim as a counterclaim in the Court of Claims.

Judgment affirmed.

MEDINA, Circuit Judge (dissenting).

I dissent and would reverse the decree of the District Court and give the United States an opportunity to prove its maritime claim for charter hire, subject to such denials and defenses as may be addressed to the merits of the claim alleged in the libel.

What is at bottom a simple case has been complicated by the forum shopping and other procedural maneuvers of the parties.

We start with a judgment of the Court of Claims for $54,097.16 in favor of Eastport, pursuant to the stipulation of June 8, 1954, which reduced Eastport's claim for $100,000 to the amount for which judgment was rendered, as the cost of repairs to the SS. Opie Read which Eastport had purchased pursuant to the provisions of the Merchant Ship Sales Act of 1946 (60 Stat. 41, 50 U.S.C.A.Appendix, §§ 1735–1746), under a contract of sale by the terms of which the purchase price was to be reduced by the amount of the cost of the repairs necessary to enable the vessel to obtain valid certificates of classification and inspection. When this judgment was presented for payment the United States had an unrelated claim against Eastport for $31,102.71 for additional charter hire, which Eastport disputed and refused to pay. Accordingly, the Comptroller General followed the procedure outlined in 31 U.S.C.A. § 227 by withholding payment of the judgment to the extent of the disputed claim, and, after Eastport's refusal to consent to the withholding, the balance due on Eastport's judgment, less $100, the estimated cost of litigating the disputed claim, was paid, in the amount of $22,899.45. This payment was made on September 29, 1954, and the present action, to recover the disputed charter hire, was instituted by filing the libel against Eastport, to recover $31,102.71, in the United States District Court for the Southern District of New York on November 9, 1954. This was in strict accordance with the mandate of 31 U.S.C.A. § 227, that "it shall be the duty of the Comptroller General," after the preliminary steps above outlined, "to cause legal proceedings to be immediately commenced." Indeed, if, after withholding, he failed to take such action, mandamus was available to compel him to do so. See Hines v. United States, 70 App.D.C. 206, 105 F.2d 85; National Bulk Carriers v. Warren, D.C.D.C., 82 F.Supp. 511.

In the meantime, on October 7, 1954, and with the obvious purpose and intent of forcing the United States to litigate in the Court of Claims its maritime claim for charter hire, Eastport sued the United States in the Court of Claims on its 1954 judgment.

The proceedings in the Court of Claims action, prior to the dismissal of the libel herein by Judge Murphy on July 17, 1956, while interesting as an example of the ingenuity with which those skilled in the law can manipulate procedural devices originally intended to further and simplify the administration of justice, are quite irrelevant to the disposition of this appeal. Nor did Judge Murphy base his dismissal of the libel on any of the rulings or upon the judgment entered in Eastport's action in the Court of Claims to recover the amount of its prior judgment. Suffice it to say that the United States paid the balance due on the judgment sued upon and later confessed judgment

for the amount of the interest claimed by Eastport.

The dismissal below was based on two grounds: (1) that when the United States paid the balance of $31,102.71 due on Eastport's judgment, this was a voluntary payment, "made with full knowledge of all the facts without necessity or urgency," and could not "be recovered back" [142 F.Supp. 376] in this action; and (2) that the claim of the United States for additional charter hire was a compulsory counterclaim under Rule 17 (a) of the Court of Claims, and, as no such counterclaim had been pleaded prior to the final disposition of the case by the Court of Claims, the District Court was barred from giving relief as prayed in the libel. I think each of these two rulings was erroneous.

The short answer to the treatment of the payment of the $31,102.71 as a voluntary and non-recoverable payment is, that it was a payment by the United States of the balance due on a judgment entered against the United States. Eastport's claim relative to the repairs to the SS. Opie Read had been reduced to judgment, the United States having followed the procedure outlined in 31 U.S.C.A. § 227, decided the withholding of the $31,102.71 was no longer necessary for the protection of its rights, and this amount was paid on April 28, 1955. Obviously this payment was in liquidation of the judgment previously obtained against the United States, and the judgment thus paid was based upon a claim by Eastport for a sum equal to the cost of the repairs made to the SS. Opie Read. I do not see how the payment by a judgment debtor of a judgment against him can be considered a voluntary payment in liquidation of an entirely unrelated claim which that debtor had against the judgment creditor.

The line of reasoning proffered by Eastport, which led to the holding that there was a voluntary and non-recoverable payment of the $31,102.71, is interesting as it cuts across all four of the cases argued together on November 6, 1957. Grace Line, Inc., v. United States

of America, 2 Cir., 255 F.2d 810; Isthmian Steamship Company v. United States of America, 2 Cir., 255 F.2d 816; United States of America v. Eastport Steamship Corporation, 2 Cir., 255 F.2d 795; and Isbrandtsen Company, Inc., v. United States of America, 2 Cir., 255 F.2d 817. The argument here was that Eastport's action on its judgment was in effect an action to recover money wrongfully withheld. Hence, it was said, the payment of the $31,102.71 was not a payment of the balance due on the judgment, which was the subject of the suit in the Court of Claims, but rather a voluntary admission that the $31,102.71 had been wrongfully withheld, thus eliminating the claim of the United States for additional charter hire. In other words, despite the insistence of government counsel that the United States had a valid maritime claim for additional charter hire, which had already been set forth in the pending libel herein, and the further insistence that the $31,102.71 was paid in liquidation of the judgment sued on in the Court of Claims, this payment was construed as in some way constituting an estoppel against the prosecution of the claim for additional charter hire, and the semantics used to arrive at this curious result was in terms of "voluntary payment." Thus white was made to appear black, and Eastport's maneuver of bringing its action on the judgment in the Court of Claims succeeded, at least temporarily. I do not think we should give the stamp of our approval either to this result or to the reasoning which led to it.

But it is only fair to say that part of this confusion was caused by the position taken by the government relative to withholdings generally. We have already dissipated some of this confusion by our decision in Grace Line, Inc., v. United States of America, handed down herewith, to the effect that withholdings by the Comptroller General, pursuant to 31 U.S.C.A. § 71, do not constitute a payment and discharge of the indebtedness on which such withholdings are based, and our decision in Isbrandtsen Company,

Inc., v. United States of America, also filed herewith, to the effect that a libel which attempted to assert a claim for charter hire due to Isbrandtsen by the United States was not to be construed as an action to recover amounts withheld by the Comptroller General by reason of claims wholly unrelated to the claim asserted in the libel. Such fictions as the one applied by the District Court in Isbrandtsen and the one applied in this case by the District Court serve no useful purpose and they inevitably have repercussions in seemingly similar situations.

What I would have us do in this case is precisely what we have done in Grace Line and Isbrandtsen, that is to say, take the claim asserted in each libel or complaint as stating the claim therein set forth, subject to such defenses as may exist, such as the time bar of limitations, and also subject to such set-offs or counterclaims as may be properly pleaded in accordance with the applicable rules. Here Eastport's suit in the Court of Claims was an action on its prior judgment; and the payment was in liquidation of that judgment. This is an end of the matter; the claim of the United States for additional charter hire is not in any manner affected by the payment thus made. We are not now concerned with the question whether or not the Court of Claims had jurisdiction of such an action, based on a judgment rendered in the Court of Claims, Eastport Steamship Company v. United States, 130 F. Supp. 333, 131 Ct.Cl. 210; nor are we concerned with the propriety of the action of the Comptroller General, who first withheld and later paid the balance due on the judgment sued upon. To characterize this action on the judgment as one to recover moneys withheld by the United States is a mere play on words. Any action for a sum of money alleged to be due and owing by the United States may be called an action to recover moneys withheld.

I turn now to the ruling below to the effect that the claim for additional charter hire, asserted by the United States in its libel herein, was a compulsory counterclaim, required by Rule 17(a) of the Court of Claims to be asserted in Eastport's action on the judgment, this being the second ground on which the libel was dismissed.

Rule 17(a) of the Court of Claims provides:

"*Compulsory Counterclaims.* The answer shall state as a counterclaim any claim which at the time of serving the answer the defendant has against any plaintiff, if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action, and except that in any case, where the hearing in the first instance is limited to the issues of fact and law relating to the right of plaintiff to recover, defendant may plead such a counterclaim within 60 days after the Court shall have rendered judgment determining that plaintiff has a right to recover."

The sole question is whether the claim of the United States for additional charter hire "arises out of the transaction or occurrence that is the subject matter" of the complaint filed by Eastport in the Court of Claims in its action on the prior judgment.

My position is that this complaint clearly stated a claim based on the prior judgment, which was the "transaction" or "occurrence" that was the "subject matter" of the complaint; and that consequently the government claim for additional charter hire was not a compulsory counterclaim. Nor did the judgment cease to be the "transaction" or "occurrence" that was the "subject matter" of the complaint because Eastport chose to include additional allegations of the withholding made by the Comptroller General pursuant to the provisions of 31 U.S.C.A. § 227.

It must be borne in mind that the decision on this point turns not on the scope of "transaction" or "occurrence" as used in the compulsory counterclaim rule, and as broadly construed in such cases as Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750; United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F.2d 213, 216; and Lesnik v. Public Industrials Corp., 2 Cir., 144 F.2d 968, 975, but rather on the determination of the "subject matter" of Eastport's 1954 suit in the Court of Claims.

The Court of Claims assumed jurisdiction over Eastport's 1954 suit because it was "founded upon (an) Act of Congress" within the meaning of 28 U.S.C. § 1491(2); Benedict v. United States, 66 Ct.Cl. 437, 443. The act of Congress relied on was 68 Stat. 827–828, which appropriated money for the payment of Eastport's prior judgment against the United States, and, had there been no such appropriation act enacted by Congress, the Court of Claims would have lacked jurisdiction over the suit on the judgment alone. Hetfield v. United States, 78 Ct.Cl. 419. Thus, the basis or subject matter of Eastport's suit was its prior judgment for the payment of which Congress had appropriated funds.

The government's libel in the court below was based on a charter party agreed upon by Eastport and the United States in 1947. That this libel for additional charter hire did not arise from the same "transaction" or "occurrence" which was the "subject matter" of Eastport's suit is clear. Nor, in addition, was the government's libel in any way related to the claim on which Eastport recovered its prior judgment in the Court of Claims.

Moreover, the claim for interest was merely for part of what is alleged to be due on the judgment because of the provisions of 31 U.S.C.A. § 227 as interpreted by Eastport. Otherwise, the general rule that interest is not recoverable against the United States would be applicable.

Were this not so any private party, who had recovered a judgment, however small, against the United States could force the government to litigate in the Court of Claims any and all claims the government might have against that party, as 28 U.S.C. § 1503 confers on the Court of Claims jurisdiction over "any set-off or demand by the United States against any plaintiff in such court."

If the reasoning of the District Court below is to be upheld, the United States adopts the procedure outlined in 31 U.S.C.A. § 227 at its peril. Once the withholding contemplated by Section 227 is made, the judgment creditor has only to rush into the Court of Claims, before the United States has had an opportunity "to cause legal proceedings to be immediately commenced to enforce" its cause of action, as was done in this case, and this would force the United States to choose between pleading a set-off or counterclaim in the Court of Claims or being forever foreclosed from suing on its claim. Such a result, which, in the not atypical situation now before us, makes every claim of the United States against the private party a compulsory counterclaim, cannot, I think, have been within the Congressional intent in enacting 31 U.S.C.A. § 227 and 28 U.S.C. § 1503. Certainly the anomalous and procedurally unsound result we have here should be avoided in the absence of some compelling statutory mandate.

There remains the question of *res judicata*, which was not before the District Court, as the proceedings hereinafter referred to, which led to the *pro confesso* judgment for the unpaid interest at 6% on the prior judgment, were had after July 17, 1956, when Judge Murphy dismissed the libel.

Briefly stated there was a series of motions, amended pleadings and rulings in the Court of Claims. Eastport, even after the United States paid the balance due on the judgment sued upon, resorted to a variety of maneuvers to compel ad-

judication in the Court of Claims of the government claim for additional charter hire, but the United States insisted that its claim was of an exclusively maritime character (Sword Line, Inc., v. United States, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493), and that it was entitled to have that claim, as alleged in its libel herein, adjudicated by the United States District Court for the Southern District of New York. And in its amended answer the United States refused to allege that its prior action in withholding a part of the sum due Eastport on its judgment was justified because of Eastport's indebtedness for the additional charter hire. Eastport Steamship Corporation v. United States, 140 F.Supp. 773, 775, 135 Ct.Cl. 175. Finally, however, and after the striking of its answer and amended answer, the United States filed a statement with the Court of Claims to the effect that it consented to have its pleadings amended "so as to admit owing the amount for which judgment is confessed," i.e., for the amount of interest Eastport claimed. On October 19, 1956, the Court of Claims ordered that the answer of the United States be amended "so as to admit liability" for the amount of interest claimed, and awarded Eastport a judgment in that amount, which was paid.

Clearly the principle of *res judicata* is not applicable. Nor is the claim asserted in the libel in this case barred by collateral estoppel. Such an estoppel by judgment prevents subsequent litigation only of those issues that were actually litigated and determined in the earlier action, but has no effect on those questions which might have been but were not previously litigated and determined. United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182.

For these reasons I would reverse the decree appealed from, deny the motion to dismiss the libel, based on the exceptions and exceptive allegations, and permit libelant to proceed.